**Chance Derrick GONZALES,
Appellant,**

v.

**The STATE of Texas on the State's.**

**No. 47–00.**

Court of Criminal Appeals of Texas.

Feb. 13, 2002.

Michael B. Charlton, Houston, for Appellant.

William J. Delmore, III, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, HERVEY, and COCHRAN, JJ., joined.

Texas Family Code § 52.02(b) requires a police officer taking a juvenile into custody to promptly notify the juvenile's parents.[1] The issue presented in this case is

---

1. Texas Family Code § 52.02(b) provides:

    (b) A person taking a child into custody shall promptly give notice of his action and a statement of the reason for taking the child into custody, to:
    (1) the child's parent, guardian, or custodian; and

whether the First Court of Appeals erred in holding that appellant's written statement was automatically inadmissible because his parents were not notified in accordance with Family Code § 52.02(b). We hold that the First Court of Appeals erred.

## Relevant Facts

On February 18, 1996, appellant, Chance Derrick Gonzales, shot and killed a convenience store clerk in Houston during a botched attempt to steal beer. Appellant, who was fifteen years old at the time, was later arrested and taken to a designated juvenile processing center.[2] En route, the arresting officers gave appellant the *Miranda* warnings.[3] Upon arrival, the officers took appellant's written statement, in compliance with Texas Family Code § 51.095(a).[4]

The entire process, from the moment of appellant's arrest until his later release to the juvenile detention facility, lasted about five hours. The arresting officer made no attempt to notify appellant's parents. Furthermore, the record suggests that appellant's parents were not notified of his arrest until he was processed into the juvenile detention facility, five to six hours after he was initially taken into custody.

After the juvenile court waived its jurisdiction over appellant, a Harris County grand jury indicted him for capital murder. *See* Tex. Pen.Code § 19.03(a)(2). Appellant later filed a motion to suppress his written statement on the ground it was obtained in violation of Texas Family Code § 52.02(b). More specifically, appellant argued that his confession must be suppressed because the police did not promptly notify his parents that he was in custody. At the conclusion of the suppression hearing, the trial court denied appellant's motion. Appellant then pled guilty to the lesser included offense of murder.

On appeal, appellant reiterated his argument that his statement must be suppressed. The First Court of Appeals agreed with appellant and held that the trial court erred in refusing to suppress the statement. "Although we find that the requirements of [Texas Family Code] section 51.095(a)(1)(A) were met, we must conclude the appellant's confession was inadmissible because of the violation of Family Code section 52.02(b)." *Gonzales v. State,* 9 S.W.3d 267, 271 (Tex.App.Houston [1st Dist.] 1999). We granted the State's petition for discretionary review to determine whether the Court of Appeals erred. *See* Tex.R.App. Proc. 66.3(b).

---

(2) the office or official designated by the juvenile court.

2. *See* Tex. Fam.Code § 52.02(a) ("Except as provided by Subsection (c), a person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025 . . . .").

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Texas Family Code § 51.095(a) provides that "the statement of a child is admissible in evidence in any future proceeding concerning

the matter about which the statement was given if" certain procedural requirements are followed. The requirements are essentially that the statement be in writing, a magistrate warn the child of his rights (to have an attorney present, to remain silent, to have an attorney appointed, to terminate the interview), the statement be signed in the presence of a magistrate who is fully convinced that the child is knowingly and voluntarily making the statement and waiving his rights, and finally, the magistrate must certify that he examined the child outside the presence of law enforcement officers. Here, it is not argued, nor is there any question, that the requirements of § 51.095(a) were followed.

In its brief to this Court, the State argues that a juvenile's written statement should not be subject to suppression without some showing of a causal connection between the failure to notify the juvenile's parents and the juvenile's execution of a written statement.

### Analysis

In order for a juvenile's written statement to be suppressed because of a violation of § 52.02(b), there must be some exclusionary mechanism. Unlike § 51.095(a), § 52.02(b) is not an independent exclusionary statute. Texas Family Code § 51.17, however, provides that "Chapter 38, Code of Criminal Procedure, appl[ies] in a judicial proceeding under this title." Thus, if evidence is to be excluded because of a § 52.02(b) violation, it must be excluded through the operation of Article 38.23(a).

■ Article 38.23(a) provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas ... shall be admitted in evidence." Our decisions have established that evidence is not "obtained ... in violation" of a provision of law if there is no causal connection between the illegal conduct and the acquisition of the evidence. *Roquemore v.*

*State*, 60 S.W.3d 862 (Tex.Crim.App.2001); *Chavez v. State*, 9 S.W.3d 817 (Tex.Crim. App.2000); *State v. Daugherty*, 931 S.W.2d 268, 269 (Tex.Crim.App.1996); *Johnson v. State*, 871 S.W.2d 744, 750 (Tex.Crim.App. 1994).[5]

■ In light of Article 38.23(a), the State argues, and we agree, that before a juvenile's written statement can be excluded, there must be a causal connection between the Family Code violation and the making of the statement. Here, the Court of Appeals did not discuss the requirements of Article 38.23(a). Instead, the court held simply that the confession was automatically inadmissible because of the police officers' failure to notify appellant's parents, in violation of Texas Family Code § 52.02(b).[6] The court relied on our decision in *Baptist Vie Le v. State*, 993 S.W.2d 650 (Tex.Crim.App.1999).

In *Baptist Vie Le*, we considered whether a violation of Texas Family Code § 52.02(a) required the suppression of an otherwise admissible statement. That section essentially provides that once a juvenile is taken into custody, he must either be taken, without unnecessary delay, to a juvenile processing center or there must be compliance with one of the other statutory options.[7] In that case, the officers

---

5. G. Dix & R. Dawson, 40 *Texas Criminal Practice and Procedure* § 4.57 (2d ed. 2001) ("Article 38.23(a)'s requirement that the challenged evidence have been obtained in violation of the law can be fairly read as imposing some sort of requirement of a causal relationship between the violation of the legal requirement and the 'obtain[ing]' or *acquisition* of the evidence at issue.") (emphasis in original).

6. Many of the lower courts, including the Court of Appeals here, have assumed that a violation of the Family Code automatically leads to the exclusion of evidence. *See, e.g., Anthony v. State*, 954 S.W.2d 132, 136 (Tex. App.San Antonio 1997, no pet.) ("An officer

detaining a juvenile must comply with each of the provisions of the Family code ... Violation of these statutes renders illegally obtained evidence inadmissible."). This is not true. Evidence can only be excluded through the operation of an exclusionary mechanism, either Article 38.23(a) or some other exclusionary statute.

7. Texas Family Code § 52.02(a) provides the following options:

(1) release the child to a parent, guardian, custodian of the child, or other responsible adult upon that person's promise to bring the child before the juvenile court as requested by the court;

took the juvenile to the homicide division of the police department, where they obtained a statement from him. The homicide division was not a juvenile processing center, nor did taking him there satisfy one of the other statutory options. Thus, we held that the statement was inadmissible since the officers failed to comply with the Family Code.

In *Baptist Vie Le*, we did not automatically exclude the evidence. Rather, we recognized that Article 38.23(a) provides the proper mechanism for excluding evidence obtained in violation of the Family Code. *Baptist Vie Le*, 993 S.W.2d at 656 n. 14. Moreover, nothing in *Baptist Vie Le* did or could alter the statutory requirements of Article 38.23(a). *See Chavez*, 9 S.W.3d at 819–820; *Daugherty*, 931 S.W.2d at 269; *Johnson*, 871 S.W.2d at 750. Furthermore, *Baptist Vie Le* relied on and reaffirmed our previous decision in *Comer v. State*, 776 S.W.2d 191 (Tex.Crim. App.1989).

In *Comer* we recognized—and our subsequent holdings in *Roquemore, Chavez, Johnson, and Daugherty* clarified—that an exclusionary analysis under Article 38.23(a) necessarily entails a causal connection analysis.[8] There, the appellant argued that his confession should have been suppressed because the police officer failed to comply with Family Code § 52.02(a).[9] We concluded that detaining a juvenile for approximately three hours to obtain his confession violated the § 52.02(a) requirement that a juvenile be taken immediately to either an authorized officer of the juvenile court or to a juvenile detention center. However, we made it clear that a violation of § 52.02(a) does not necessarily make a statement given by the child inadmissible. *Comer*, 776 S.W.2d at 196.[10] We further held that if evidence obtained in violation of the Family Code is to be excluded, Article 38.23(a) is the proper mechanism for exclusion. *Id.* at 196.

In the instant case, the Court of Appeals failed to consider whether there was a causal connection between the illegality and the acquisition of the evidence. Therefore, we vacate the judgment of the

---

(2) bring the child before the office or official designated by the juvenile court if there is probable cause to believe that the child engaged in delinquent conduct or conduct indicating a need for supervision;

(3) bring the child to a detention facility designated by the juvenile court;

(4) bring the child to a secure detention facility as provided by Section 51.12(j);

(5) bring the child to a medical facility if the child is believed to suffer from a serious physical condition or illness that requires prompt treatment; or

(6) dispose of the case under Section 52.03.

8. We implicitly held that a "causal connection" analysis is appropriate. We stated that "[w]e cannot say with any degree of confidence that had [Comer] been transported 'forthwith' to the custody of the juvenile detention facility, where he may have had access to, if not counsel, at least his parents, ... he would have still chosen to confess his crime." *Comer*, 776 S.W.2d at 197. *See* G.

Dix & R. Dawson, 41 *Texas Criminal Practice and Procedure* § 13.339 (2d ed. 2001) ("This [statement in *Comer*] appears to be a conclusion that the evidence fails to show the lack of a causal connection between the statutory violation and the making of the statement.").

9. At the time we wrote *Comer*, § 52.02 stated that persons taking a juvenile into custody must take certain steps "without unnecessary delay and without first taking the child anywhere else." The Legislature subsequently modified the statute to read: "without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025."

10. "We have also held that an otherwise valid confession following a detention that is illegal as a matter of state law will not be excludable under Article 38.23 ... where it is determined that the taint of the illegality has dissipated by the time the confession was taken." *Comer*, 776 S.W.2d at 196.

Court of Appeals and remand the cause to that court for further proceedings consistent with this opinion.[11]

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of the majority. I would differentiate the violation in this case from the violations in *Vie Le v. State*, 993 S.W.2d 650 (Tex.Crim.App.1999) and *Roquemore v. State*, 60 S.W.3d 862 (Tex.Crim.App.2001). In *Vie Le*, the statement was obtained at the homicide department, which was not one of the places in which the taking of a statement from a juvenile was permitted. It was therefore obtained in violation of the Family Code § 52.02(a). We noted that "the Legislature intended to restrict involvement of law enforcement officers to the initial seizure and prompt release or commitment of the juvenile offender [in accordance with § 52.02(a) ]...." *Vie Le* at 655, quoting *Comer v. State*, 776 S.W.2d 191, 195 (Tex.Crim.App.1989). The Family Code sections at issue, §§ 52.02(a) and 52.025, expressed that intent by limiting where law enforcement could take the child, when, and for what purpose. It is reasonable to conclude that the narrow limits on law enforcement involvement were a legislative effort to balance the competing interests of society's protection from the criminal acts of juveniles and the juvenile's protection from the use of coercion to obtain a statement. *See, e.g., Comer* at 193, 196. A violation of the Family Code that raises an issue as to the voluntariness of a statement by a juvenile because of possibly coercive conditions which produced that statement, implicates the standards set out in § 51.095.

In *Roquemore*, the challenged statement was not the result of custodial questioning or, indeed, any questioning at all. *Roquemore* at 868 ("The oral statements were not the result of any questions or conduct by [the police officer].""). The provisions of § 51.095 did not, therefore, apply. As to the stolen property, we found a violation of § 52.02(a) and its apparent expression of legislative intent to restrict involvement of law enforcement officers to the initial seizure and prompt release or commitment of the juvenile offender.

Section 51.095 sets out what must be done before the statement of a juvenile will be admissible: "the statement of a child is admissible in evidence ... if:...." The reasonable inference is then that if the stated conditions are not met, the statement of the child will not be admissible. There is a clear legislative intent to suppress the statement if the state violates the statute.

On the other hand, in this case the alleged violation of § 52.02(b) was of a legislative instruction which does not regulate the involvement of law enforcement officers in the initial seizure and prompt release or commitment of the juvenile offender. There is, therefore, no implication of the provisions of § 51.095 and no clear legislative intent to suppress the statement under that section if the state violates the notification requirement. The evaluation

---

11. What is before us today is the Court of Appeals' opinion on rehearing. The Court of Appeals' opinion on original submission held that the Family Code violation here "does not provide a grounds (sic) to exclude the appellant's confession, because [Family Code] section 51.095(a)(1)(A) addresses the proper procedure for obtaining a written statement from a juvenile." *Gonzales*, 9 S.W.3d at 271. That statement seems to be a holding that section 51.095(a) "trumps" Article 38.23(a), *i.e.*, if a juvenile's statement is admissible under section 51.095(a), then it cannot be excluded by operation of Article 38.23(a). It is unnecessary to address this issue, and our decision today should not be read as foreclosing consideration of this issue in a future case.

of the admissibility of a statement obtained without notice, or attempted notice, to the enumerated persons and agencies must therefore be done under the requirements of Tex.Code Crim. Proc. § 38.23, as mandated by Tex. Fam.Code Ann. § 51.17.

KEASLER, J., filed this concurring opinion.

I agree with the majority that the court of appeals erred in holding that Gonzales's statement was automatically inadmissible. But I would analyze the issue slightly differently.

In *Johnson v. State*,[1] we made clear that the attenuation doctrine is applicable to Article 38.23. We explained that Art. 38.23 excludes evidence that is "obtained" in violation of the law, and "evidence sufficiently attenuated from the violation of the law is not considered to be 'obtained' therefrom."[2] We further explained that "the attenuation doctrine is not an exception to Art. 38.23, but rather is a method of determining whether evidence was 'obtained' in violation of the law."[3]

The court of appeals found a violation of Family Code § 52.02(b) and then concluded that the statement was automatically inadmissible. The court relied on our opinion in *Vie Le v. State*[4] for this conclusion. But the court misunderstood that holding. In *Vie Le*, we correctly applied Art. 38.23 to the Family Code violation, but in that case, there was no question that the statement was obtained as a result of the Family Code violation. There was no need for the Court to expound on the issue. The fact that we did not address the lack of any attenuation in *Vie Le* does not mean that we overruled *Johnson*.

The appellate court did not consider, pursuant to *Johnson*, whether Gonzales's statement was "obtained" as a result of the violation of the Family Code. Therefore, I agree with the majority that this case should be remanded for the appellate court to consider that issue.

With these comments, I concur in the court's judgment.

KELLER, P.J., filed a dissenting opinion.

Not every violation of law should trigger Article 38.23's exclusionary sanction; the exclusionary rule should not be invoked for laws that are unrelated to its purpose:

> But the underlying theory of both the exclusionary rule and article 38.23 is the same: to protect a suspect's liberty interests against the overzealousness of others in obtaining evidence to use against them. Thus, unless someone's privacy or property interests are illegally infringed in the obtainment of evidence the core rationale for providing this prophylactic measure is not met and its use is unwarranted. To expand the breadth of 38.23 to any and every violation of Texas "law"—beyond those that affect a defendant's privacy or property interests—is to ignore the basic premise under which the statute was created and would lead to absurd results.[1]

For example, we have declined to apply Article 38.23's exclusionary rule to violations of the Assumed Name Statute because that statute had nothing to do with the primary purpose of the exclusionary

1. 871 S.W.2d 744 (Tex.Crim.App.1994).

2. *Id.* at 750.

3. *Id.* at 751.

4. 993 S.W.2d 650 (Tex.Crim.App.1999).

1. *Chavez v. State*, 9 S.W.3d 817, 822–823 (Tex. Crim.App.2000)(Price, J. concurring).

rule.[2] Likewise, Article 38.23 should not be applied to violations of Texas Family Code § 52.02(b) because § 52.02(b) is unrelated to the gathering of evidence.[3]

§ 51.095, entitled "Admissibility of a Statement of a Child," sets out in detail the procedures required for taking a juvenile's statement. A statement taken in compliance with those procedures *"is admissible in evidence."* [4] Appellant's statement was taken in compliance with § 51.095 and thus should be "admissible in evidence." Nevertheless, the Court holds that the statement is subject to exclusion because of the interaction of § 52.02(b) and Article 38.23. This holding appears to rest on an assumption that Article 38.23 "trumps" § 51.095. I disagree with this conclusion because the positive (i.e.,"is admissible") phrasing of the statute—that by its terms and title actually deals with the admissibility of such statements—renders a compliant statement admissible. I realize that this Court has, in spite of these considerations, allowed Article 38.23 to trump § 51.095 upon a violation of subsection (a) of § 52.02. But we have not previously done so with regard to subsection (b) of that statute.

§ 52.02(b) provides:

A person taking a child into custody shall promptly give notice of his action and a statement of the reason for taking the child into custody, to:

(1) the child's parent, guardian, or custodian; and

(2) the office or official designated by the juvenile court.

Although we have applied the statutory exclusionary rule to violations of § 52.02(a), concerning the failure to deliver a juvenile taken into custody to the proper place at the proper time, § 52.02(b) involves distinct considerations. While § 52.02(a) concerns a juvenile's liberty interests, § 52.02(b) is a third party notification provision. By the statute's very terms, the right to be notified is for the benefit of the parent, guardian, etc. There is nothing in the statute that even suggests that its purpose is to allow parents to prevent their child from making a statement. It seems obvious that if that had been the Legislature's intent, it would have included the notification requirement as a prerequisite under § 51.095, "Admissibility of a Statement of a Child."

To hold that Article 38.23 is implicated, one would have to assume that the notice provision is designed to protect the child's interests. However, it appears to me that the notice provision is designed instead to protect the parent's interest in knowing the whereabouts of the child. The latter interpretation is bolstered by the fact that § 52.02(b) also requires notifying the designated juvenile office or official. Is the juvenile office notification provision also designed to protect the juvenile's rights? What could the Legislature have believed the juvenile office would do in that respect? Would a juvenile office be empowered to (or even interested in) terminating a police interrogation? I think not, and for that reason, I conclude that § 52.02(b) is not concerned with the personal rights of the juvenile. The provision is simply an

**2.** *Roy v. State,* 608 S.W.2d 645, 651 (Tex. Crim.App.1980).

**3.** The Court understands the State's position to be that the appellant's statement is admissible absent a causal connection between the violation of § 52.02(b) and the taking of the statement. That is the State's fall-back argument. The primary position of the State, in the briefs of both the District Attorney and Amicus Curiae, is that Article 38.23 simply does not apply to a violation of § 52.02(b).

**4.** § 51.095 (emphasis added).

administrative provision designed to notify interested parties.

By its holding, the Court implies that parents have the right to be present during custodial interrogation of a child. There does not seem to be any support for this proposition. Although the juvenile *court* must permit visitation at "all reasonable times," no law requires the juvenile *officer* to allow visitation at all.[5] And the juvenile court need not permit visitation at all times—only at all "reasonable" times. Contrary to permitting a parent to intrude himself into a custodial interrogation, § 51.12(b) directs that the parent be allowed to see the child on the juvenile court's terms, not the parent's.

It is suggested that the notification provision enables parents to exercise their rights to care for and control the child, which rights inure to the parents under § 151.003(a). But these parental rights are enumerated in the context of Title V, involving such matters as custody disputes between divorced parents. Parental rights listed in § 151.003 are more properly helpful in answering questions like who, among competing parents, is legally responsible for a child. There is no reason to suppose that these rights under Title V, subsection B, entitled "Suits Affecting the Parent Child Relationship," are intended to be applied to matters involving statutes under Title III, "Juvenile Justice Code," in a manner that is contrary to the explicit language of § 51.095.

And applying Article 38.23 to the notice provision creates potential problems. How quickly must someone act to satisfy the requirement that the notice be given "promptly"? What happens if the parent, guardian, or custodian is away from a phone and cannot be reached? What if the parents are un-notifiable because the juvenile is in custody for murdering them? Juveniles sometimes lie to the police about their age and identity. Some juveniles will not want their parents to be notified and will give false or unhelpful information. Some will not know how to contact their parents. Is it enough that the arresting official tried in good faith to promptly notify the relevant person? It would seem not, since the juvenile notice provision does not contain "good faith" or "reasonable attempt" language. Rather than interpreting Article 38.23 to apply to the notification requirement, and then being forced to create a good faith exception in order to keep our interpretation from being absurd, we should read the relevant statutes in a harmonious and common-sense manner to start with.

The question here is whether the Legislature intended Article 38.23 to supercede the directives of § 51.095 because of a violation of § 52.02(b). Practical problems that will arise if we so interpret Article 38.23 are relevant to this determination. And these potential problems lend further support to the idea that the purpose of the notice provision is to allay a parent's concern over the unexplained absence of his child rather than to allow the parent to interfere with custodial interrogation.

I would hold that an otherwise admissible statement is not subject to suppression because of a failure to notify parents under § 52.02(b) prior to the execution of the statement. Rather than remanding this case to the Court of Appeals, we should reverse the Court of Appeals's decision and affirm the decision of the trial court. I respectfully dissent.

---

5. § 51.12(b).