IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-12-04 & PD-72-04 






JOHN TUY PHAM and CHANCE DERRICK GONZALES, Appellants



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Price, Womack, Johnson, Hervey, Holcomb, and Cochran, JJ., join. Keasler, J., filed
a dissenting opinion.


O P I N I O N 






 Appellant John Tuy Pham was convicted by a jury of the offense of murder, and
was assessed a punishment of life imprisonment in the TDCJ Institutional Division.
Appellant Chance Derrick Gonzales pled guilty to the offense of murder in the 208th
District Court of Harris County, Texas. He was sentenced to 45 years' confinement in the
Texas Department of Criminal Justice ("TDCJ") institutional division pursuant to a plea
bargain. 

 We consolidated Appellants' cases, as the same issues are raised in each of their
appeals, and both cases are being appealed from the First Court of Appeals in Harris
County. We will affirm the judgment of the court of appeals in both cases.

I. Facts

 Appellant Pham was sixteen years old at the time he became a suspect in the drive-by shooting that resulted in the death of the victim, Dung Van Ha. At 2:35 p.m. on
September 9, 1998, Houston police officers arrested Appellant at Clear Brook High
School. At 3:35 p.m., a magistrate gave Appellant legal warnings as required by section
51.095 of the Texas Family Code. Subsequently, Appellant was taken to the police
station and questioned by an investigator. Appellant admitted to his involvement in the
shooting at approximately 4:38 p.m. He was then taken to a juvenile facility for
processing by the police officers. An officer from this processing facility first notified
Appellant's family at about 8:15 p.m. when he spoke to Appellant's sister. No one from
the police department spoke with Appellant's parents until 9:50 p.m. Appellant's parents
did not come to see him until the following day.

 Appellant Gonzales was arrested in connection with a shooting death during a
robbery at a convenience store when he was 15 years old. Appellant was identified by
two witnesses who confirmed that he shot the victim while attempting to steal beer from
the store for a gang party. Police arrested Appellant at a party, sometime between
midnight and 1:30 a.m. Before police officers took Gonzales to a juvenile processing
office at approximately 2:30 a.m., the officers made a stop at a sheriff's station where
they left him for 20-30 minutes so they could pick up a surveillance tape from a
convenience store. This tape showed Appellant committing a similar type of robbery the
same night. Appellant was given his Miranda warnings in the car on the way to the
processing facility. The officer's then took Appellant to a municipal judge at 3:35 a.m.,
where he was given the warnings required by Texas Family Code section 51.095. It was
in the judge's chambers with the police officers that Appellant Gonzales then gave his
written statement. The arresting officer testified that he did not notify Appellant's parents
that their son had been arrested. Appellant Gonzales' parents did not know that he had
been arrested until he was processed into the juvenile arresting facility five to six hours
after he was arrested, and after he gave his statement to police.

II. Procedural History: Pham

 Appellant Pham originally appealed his conviction to the First Court of Appeals. 
The court of appeals in Pham v. State (1) (Pham I), reversed the conviction based on the
conclusion that the trial court erred in admitting Appellant's statement. The court held
the statement inadmissible due to the State's violation of Texas Family Code §52.02(b) (2),
and remanded the case to the trial court. The State subsequently filed a petition for
discretionary review with this court, which was granted. This court vacated Pham I in
Pham v. State (3) (Pham II), and remanded the case to the court of appeals in light of the

 decision in Gonzales v. State (Gonzales II). (4) Upon reconsideration, the court of appeals
decided Pham v. State (Pham III) (5), on November 26, 2003. In this decision, the court
held that the trial court had properly admitted Appellant's confession, and that Appellant
was not entitled to a jury instruction on the admissibility of his confession. Appellant
subsequently filed a petition for discretionary review to this Court.

III. Procedural History: Gonzales

 Appellant Gonzales appealed to the First Court of Appeals from a plea of guilty. 
The court of appeals handed down its original decision (Gonzales I) on November 4,
1999, holding that Appellant's confession was inadmissible because the State had not met
its burden of proving that Texas Family Code §52.02(b) had not been violated. (6) We
granted the State's petition for discretionary review, and on February 13, 2002, vacated
the decision of the court of appeals (Gonzales II). This Court held in Gonzales II that
Appellant's statement was not inadmissible merely because the State failed to follow the
requirements of Texas Family Code §52.02(b). We held that an exclusionary analysis
under Texas Code of Criminal Procedure Article 38.23, including a causal connection
analysis, had to be undertaken by the court, and had not been. (7) Therefore the case was
remanded. Upon reconsideration of the case, the court of appeals handed down an
opinion on November 26, 2003 (Gonzales III), (8) holding that, in an article 38.23
exclusionary analysis, the initial burden was on the appellant to demonstrate a violation of
a statutory requirement as well as a causal connection between the violation and his
ensuing confession. (9) Finding that Appellant Gonzales presented no evidence to
demonstrate this causal connection, the court of appeals affirmed the judgment of the trial
court and held Appellant's statement admissible. (10) Appellant then filed a petition for
discretionary review with this Court.

IV. First Court of Appeals' Decisions and Grounds for Review

 The court of appeals held in Pham III that the State did obtain Appellant Pham's
confession in violation of Texas Family Code section 52.02(b), however, in light of our
opinion in Gonzales II, the court also held that the confession was not automatically
inadmissible without first conducting an analysis under Texas Code of Criminal
Procedure article 38.23 to determine whether there was a causal connection between the
illegal conduct and the acquisition of the evidence. (11) The court of appeals interpreted our
remand in Gonzales II as implying that an attenuation-of-taint analysis was an insufficient
analysis to satisfy the requirement that a causal connection be established. Therefore the
court of appeals determined that the causal connection analysis required by this Court in
Gonzales II must be separate from an attenuation-of-taint analysis. (12) The court of appeals
further relied on our opinion in Roquemore v. State, 60 S.W. 3d 862 (Tex. Crim. App.
2001) for this conclusion, where this Court first conducted a causal connection analysis
and found a causal connection between the recovery of stolen property and the illegality
of police conduct, but failed to conduct an attenuation-of-taint analysis because the State
did not raise the argument. (13) 

 The court of appeals next addressed the issue of which party has the burden of
proving a causal connection, noting that no direct authority establishes who takes on this
burden. (14) The court pointed out that the issue is not who has the ultimate burden of
persuasion as to the admissibility of a confession, as this clearly rests with the State in an
attenuation-of- taint analysis, but rather who has the initial burden of production of proof
of a causal connection between the violation of the statute and the ensuing confession. 
The court ultimately held that the defendant should shoulder this initial burden of proof,
analogizing the situation to that of a violation of the statute requiring that a defendant
promptly be taken before a magistrate. The court also based its conclusion upon more
practical considerations, such as the fact that it is more "reasonable to place the burden on
the defendant to produce evidence to which only the defendant has access." (15) The court
concluded that the State has the burden to demonstrate attenuation of the taint once the
defendant has satisfied the initial burden of production of some evidence that shows a
causal connection between the police illegality and the recovery of the evidence. (16) The
court found that Appellant Pham produced no evidence of a causal connection, and
therefore did not meet his burden, making it unnecessary to conduct an attenuation-of-taint analysis, and rendering his confession admissible.

 In Appellant Gonzales' case, the court of appeals, citing its decision in Pham III
(discussed above), again held that when there is a violation of section 52.02(b) of the
Texas Family Code, the initial burden is on the defendant to demonstrate a violation of
the statutory requirement and a causal connection between that violation and the ensuing
confession. Again, the court held that Appellant Gonzales produced no evidence that
would demonstrate a causal connection between the police violation of the Family Code
and his ensuing confession, therefore his statement was admissible.

 Both Appellants argue that a causal-connection analysis is part and parcel of an
attenuation-of-taint analysis, and that the burden of proof falls on the State to negate the
causal connection between the violation and the confessions of the two Appellants. 
Appellants claim that the court of appeals ignored cases stating that when voluntariness is
an issue, the burden of proof for admissibility of confessions lies with the State, and argue
that this Court did not create a separate causal connection analysis in Gonzales II.

 The State argues in these cases that the court of appeals did not err in placing the
burden of production on Appellants to offer up evidence to prove that violations of the
Family Code occurred, and that they were causally connected to the ensuing confessions. 
The State contends that Appellants failed to meet the burden of production, i.e. they did
not produce any evidence that their statements were obtained in violation of any laws. 
Additionally, the State argues that causal connection and attenuation-of-taint are two
separate analyses by which a court will determine whether evidence was obtained in
violation of the law as set out in article 38.23.

 We granted review in both of these cases to clarify the causal connection analysis
which must be undertaken in article 38.23 suppression of evidence claims. In Appellant
Pham's case, we granted the following two grounds for review: 1) did the court of
appeals err in holding that causal connection and attenuation-of-taint constitute separate
analyses, and 2) did the court of appeals err by requiring Appellant to prove a causal
connection between the violation of section 52.02(b) of the Texas Family Code and
Appellant's confession? In Appellant Gonzales' case, we granted the following ground
for review: did the court of appeals adopt the wrong standard by which a causal
connection must be established under article 38.23 to justify suppression of evidence
seized in violation of the Family Code?IV. Law

 Neither party argues with the settled law that the burden of proof is initially on the
defendant to raise the exclusionary issue by producing evidence of a statutory violation,
and that this burden then shifts to the State to prove compliance. The main issue we face
here is whether the defendant has the burden of producing evidence that shows the
violation is connected to the obtaining of the evidence sought to be suppressed.

 Appellants argue that a causal connection analysis cannot be separated from an
attenuation analysis, and thus, since it is well settled that the State bears the burden of
proving attenuation of taint, the burden is also upon it to produce evidence of a causal
connection. We disagree. If we follow this circular argument, anytime an appellant
asserted a statutory violation of Family Code section 52.02(b), a court would immediately
have to conduct an attenuation-of-taint analysis because it is part of the causal connection
analysis. This would further the assumption that once Appellant shows a violation of the
statute under 52.02(b), the evidence is automatically assumed inadmissible unless the
State demonstrates attenuation-of-taint, an assumption which we expressly rejected in
Gonzales II.

 We have held that the State may make an attenuation-of-taint argument which is
included under an Article 38.23 analysis. (17) However, this argument is discussed by a
court only if the State raises it. (18) Analysis of causal connection and attenuation-of-taint
are not the same. An attenuation-of-taint analysis is not always required and therefore
need not always be conducted. We have expressly held that a causal connection between
a violation of section 52.02(b) and the obtaining of evidence must be shown before the
evidence is rendered inadmissible. (19) If there is no causal connection shown in the first
place, there is no reason for the State to argue that the taint of the violation is so far
removed that the causal connection is broken. Attenuation-of-taint breaks this
connection. It does not negate the existence of the causal connection. 

 If the defendant produces evidence that there is a causal connection, the State may
either try to disprove this causal evidence, i.e. disproving that there is a causal connection
in existence at all, or, the State may make an attenuation-of-taint argument. Attenuation-of-taint is evaluated under the four-step Brown v. Illinois (20) analysis, in which the State
may argue that although the defendant has demonstrated evidence of a causal connection,
the taint of the violation was so far removed from the obtaining of the evidence that the
causal chain the defendant demonstrated is in fact broken. In short, without first
establishing that there is a causal connection between the violation and the obtaining of
the evidence, there can be nothing for the State to assert has been broken through the
attenuation-of-taint factors. Thus, we uphold the court of appeals' conclusion that a
causal connection analysis regarding Family Code section 52.02(b), as required by this
Court in Gonzales II before evidence may be deemed inadmissible, is a separate from an
attenuation-of-taint analysis, which may be used by the State to rebut a defendant's causal
connection argument.

 We also uphold the court of appeals' distribution of the burdens of proof in both of
these cases. We have long held that "the burden of persuasion is properly and
permanently placed upon the shoulders of the moving party. When a criminal defendant
claims the right to protection under an exclusionary rule of evidence, it is his task to prove
his case." (21) In Russell v. State, we again cited this holding. Recognizing that this
analysis was used for federal claims of illegal search and seizure under the Fourth
Amendment, and because Texas statutory law is silent as to how the burden of proof is
distributed on a motion to suppress, this Court adopted some of the rules followed by
federal courts in distributing burdens of proof. (22) 

 Appellant argues that the burden should be on the State to show the causal
connection, and analogizes this situation to the admissibility of confessions when issues
of voluntariness are raised. Although the burden is on the State to prove that a
defendant's confession was voluntary once the issue has been raised, that situation may
be distinguished from the statutory violation of the Texas Family Code we have here. All
a defendant must do on a claim of involuntary confession is to demonstrate there a
cognizable violation, and the confession is immediately presumed inadmissible unless the
State can prove by a preponderance of the evidence that it was made voluntarily. (23)
 There
is no requirement that a defendant establish any causal connection between the illegal
conduct and the ensuing confession; the defendant simply must raise the voluntariness
issue. In this case, it is not enough for the defendant to merely establish a violation. 
Under Texas case law, it is required that a causal connection be established, and we hold
that the defendant, as the moving party wishing to exclude the evidence, is responsible for
the burden of proving this connection.

 Thus, the court of appeals correctly held that the burden is on the defendant, as the
moving party in a motion to suppress evidence obtained in violation of the law under Art.
38.23, to produce evidence demonstrating the causal connection which this court required
in Gonzales II. The burden then shifts to the State to either disprove the evidence the
defendant has produced, or bring an attenuation-of-taint argument to demonstrate that the
causal chain asserted by the defendant was in fact broken. 

V. Conclusion

 In the case of Appellant Pham, we hold that the court of appeals conducted the
appropriate analysis, and that the court did not err in requiring Appellant Pham to produce
evidence to prove a causal connection between the violation of section 52.02(b) of the
Texas Family Code and his ensuing confession. The decision of the court of appeals is
affirmed.

 In the case of Appellant Gonzales, we hold that the court of appeals adopted the
correct standard by which a causal connection must be established under Art. 38.23 to
justify the suppression of evidence seized in violation of the Family Code. The decision
of the court of appeals is affirmed.

 Meyers, J.


Delivered: June 8, 2005

Publish

 

 

 

 

 

 

















 
1. John Tuy Pham v. State, 36 S.W. 3d 199 (Tex. App. - Houston [1st Dist.] 2000).
2. Texas Family Code section 52.02(b) states:

 A person taking a child into custody shall promptly give notice of the person's

 action and a statement of the reason for taking the child into custody, to: 

 (1) the child's parent, guardian, or custodian; and (2) the office or official
designated by the juvenile board. (emphasis added) 
3. Pham v. State, 72 S.W. 3d 346 (Tex. Crim. App. 2002).
4. Gonzales v. State, 67 S.W. 3d 910 (Tex. Crim. App. 2002) (Gonzales II).
5. Pham v. State, 125 S.W. 3d 622 (Tex App. - Houston [1st Dist.] 2003) (Pham III).
6. Gonzales v. State, 9 S.W. 3d 267 ( Tex. App. - Houston [1st Dist.] 1999) (Gonzales I).
7. Gonzales v. State, 67 S.W. 3d 910 (Tex. Crim. App. 2002).
8. Gonzales v. State, 125 S.W. 3d 616 (Tex. App. - Houston [1st Dist.] 2003) (Gonzales
III). 
9. Id. at 618.
10. Id. at 619.
11. Pham III at 625.
12. Id.
13. Id.
14. Id. at 626.
15. Id. at 627.
16. Id.
17. Johnson v. State, 871 S.W. 2d 744 (Tex. Crim. App. 1994).
18. Roquemore v. State, 60 S.W. 3d 862 (Tex. Crim. App. 2001).
19. Gonzales v. State, 67 S. W. 3d 910 (Tex. Crim. App. 2002)(Gonzales II).
20. Brown v. Illinois, 422 U.S. 590 (1975).
21. Mattei v. State, 455 S.W. 2d 761, 766 (Tex. Crim. App. 1970)(quoting Rogers v. United
States, 330 F. 2d 535 (5th Cir. 1964), cert. denied, 379 U.S. 916 (1964)).
22. Russell v. State, 717 S.W. 2d 7, 9 (Tex. Crim. App. 1986).
23. United States v. Reynolds, 367 F.3d 294 (5th Cir. 2004).