

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JERRY CHRISTOPHER BARRERA, §

          Appellant, §

v. §

THE STATE OF TEXAS, §

          Appellee. §

§

No. 08-16-00229-CR

Appeal from the

County Criminal Court No. 2

of El Paso County, Texas

(TC# 20150C07125)

## **O P I N I O N**

Jerry Barrera appeals his conviction for driving while intoxicated with a BAC greater than 0.15. In three issues, Barrera claims: (1) the trial court abused its discretion in denying his motion to suppress his blood test results because there was no evidence he was read his DIC-24 warning before he was asked to submit to the blood test; (2) the trial court abused its discretion in denying his motion to suppress the blood test results because none of the exceptions apply to the requirement that the DIC-24 be read by the signing officer; and (3) the trial court abused its discretion in denying his motion to suppress the blood test results because the affidavit used to obtain the search warrant did not comply with the requirements of Article 18.01(c) of the Texas Code of Criminal Procedure because it did not specifically state his blood was the thing to be searched. We affirm.

## BACKGROUND

Around 11:00 p.m., Derrick Jerry was driving home after helping a friend put a vehicle into storage. As he was passing by an area known as the Entertainment District, a black Ford Fusion pulled out of a parking lot at a high rate of speed and slammed into Jerry's white Chevy Camaro. The collision partially disabled Jerry's vehicle. The Ford Fusion paused momentarily and drove away. Jerry attempted to follow the Ford, but with his own vehicle partially disabled he was only able to move at low speeds. As the Ford got further and further away, Jerry saw it make a sharp right turn. He then heard a loud screech and a crash. Jerry reached the turn moments later and arrived to see the Ford had slammed into a sign for O'Reilly Auto Parts. Just as Jerry was pulling into the O'Reilly Auto Parts parking lot, the driver of the Ford Fusion stumbled out of his vehicle and fell to the ground. Jerry got out of his car and called 911 to report the incident. While Jerry made the call, the driver of the Ford got up, staggered over to the passenger side of Jerry's Chevy Camaro, and unsuccessfully attempted to open the passenger door. He then turned to Jerry and stated, "Hey, dude, can you give me a ride home?" Jerry responded, "Motherf*cker, you just hit me and ran." Startled, the driver stepped back, looked at the car, looked at Jerry, turned and ran away.

Officer Anthony Alegre arrived on the scene a few minutes later. When he arrived, he saw the damaged black Ford Fusion and white Chevy Camaro. Jerry, who was standing next to the Camaro, began shouting to Alegre and pointing frantically at a black SUV that had just pulled into the O'Reilly's parking lot. In the passenger seat of the SUV was Jerry Barrera, the driver of the Ford who had fled the scene. A woman was driving him. Alegre pulled them over and directed Barrera to get out of the vehicle. Making contact with Barrera, Alegre immediately

2

noticed signs of intoxication: he had a strong odor of alcohol emanating from his person, slurred while speaking, and his eyes were bloodshot. Alegre began to ask Barrera if he was willing to perform a field-sobriety test, but he abruptly refused any tests and told Alegre to speak to his lawyer. He then stumbled over to the hood of Alegre's police cruiser and laid down on it, placing his hands under his head as if taking a nap. Alegre placed him under arrest. As he was being handcuffed, Barrera began complaining of pain in his shoulder. Alegre placed him in the back of his police cruiser and then spoke to the female driver of the SUV, who identified herself as Barrera's girlfriend. She explained he was a disabled veteran and his shoulder pain was caused by an injury he had received. Alegre called emergency services and had Barrera taken to Del Sol Medical Center.

Officer Luis Jurado accompanied Barrera to the hospital. Once at the hospital, Jurado read Barrera his statutory DIC-24 warnings regarding the consequences of refusing to voluntarily provide a blood specimen to test for alcohol. Barrera refused to provide a specimen. Jurado informed Alegre of the refusal and Alegre began working on an affidavit to obtain a search warrant for Barrera's blood. Based on his affidavit, Alegre was able to obtain a search warrant from a magistrate for a blood draw. A test of Barrera's blood indicated a blood-alcohol content of .213, well above the legal limit. Barrera was arrested and charged by information with driving while intoxicated with an alcohol concentration of 0.15 or more. Officer Alegre later signed the DIC-24, affirming the warning had been read to Barrera.

Barrera filed a motion to suppress evidence of the blood test. The basis for his motion was that the officer who read him his DIC-24 warning was not the officer who ultimately signed it. Barrera testified at the suppression hearing for the limited purpose of establishing standing.

3

The State called Officer Alegre, who testified to the above facts. Alegre relayed that Officer Jurado called him from Del Sol Medical Center and told him he had read Barrera the DIC-24 notice and Barrera had refused to give a blood specimen. After learning of the refusal, Alegre produced an arrest affidavit and was able to obtain a search warrant from a magistrate, which is how they ultimately obtained Barrera's blood. Alegre testified the reason he had signed the DIC-24 instead of Officer Jurado was that, based on his understanding, he was required to sign the form as the arresting officer. He stated he filled out the DIC-24 that evening at the police station after having worked on the arrest affidavit and search warrant. After signing it, Alegre gave the DIC-24 form to Barrera along with his other documents. The trial court denied Barrera's motion to suppress. In its findings of fact, the court found that Officer Jurado had read the DIC-24 warnings to Barrera in the presence of Officer Alegre, that Barrera refused to provide a blood specimen, and that the officers executed a warrant from a neutral magistrate who determined probable cause and issued the warrant. The court concluded the officer who reads the DIC-24 warnings to a suspect does not have to be the arresting officer, and while the arresting officer should be the one to give the warnings, an assisting officer reading the warnings in the arresting officer's presence is sufficient. The court further concluded there was probable cause for Barrera's arrest and a search warrant was obtained to draw his blood. Barrera was ultimately convicted by a jury of driving while intoxicated.

Barrera filed a motion for new trial, in which he reurged his contention that the blood test results should have been suppressed because Officer Alegre was not the officer who read the warning to him even though he signed it. In response, the State asserted that the DIC-24 is not required to be read and signed by the same officer to be valid, and that in any event it would not

4

affect the admissibility of Barrera's blood test because it was secured based on a valid search warrant. The trial court denied the motion for new trial. This appeal followed.

## DISCUSSION

### The DIC-24 Warnings

In his first and second issues, Barrera contends the trial court abused its discretion in denying his motion to suppress evidence of the blood test because (1) there was no credible evidence that Officer Jurado read the DIC-24 warnings form to Barrera because he did not sign the form himself, and (2) no exception applied to what he asserts is the requirement that the officer signing the DIC-24 must be the same officer who read the warnings. The State counters that because Barrera's blood was obtained by means of a search warrant—not a voluntary blood draw—there is no causal connection between any defect in the DIC-24 warnings and the obtaining of Barrera's blood.

### *Standard of Review*

When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial judge's ruling. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex.Crim.App. 2011)(*citing State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008)). We also afford almost total deference to the trial court's determination of historical facts when those facts are supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. *Johnston*, 336 S.W.3d at 657, (*citing Garcia-Cantu*, 253 S.W.3d at 241). We review *de novo* mixed questions of law and fact, provided the trial court did not resolve them based on an evaluation of credibility and demeanor. *Guzman*,

5

955 S.W.2d at 89.

*Applicable Law*

Section 724.015 of the Texas Transportation Code provides that before an officer can request a suspect voluntarily submit to the taking of specimen, he must inform the suspect, orally and in writing, of the possible consequences of refusing to voluntarily give a specimen. TEX.TRANSP.CODE ANN. § 724.015.   The warnings are as follows:

> (1) if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;
>
> (2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended, whether or not the person is subsequently prosecuted as a result of the arrest, for not less than 180 days;
>
> (3) if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person.[1]

TEX.TRANSP.CODE ANN. § 724.015.

The exclusionary rule in Texas is broader than the federal exclusionary rule.  *Wilson v. State*, 311 S.W.3d 452, 458 (Tex.Crim.App. 2010).   Article 38.23 of the Texas Code of Criminal Procedure states in relevant part as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a).

Use of any evidence that would be barred under the federal exclusionary rule is also barred under Article 38.23.   *Wilson*, 311 S.W.3d at 458.   While Article 38.23 also prohibits the

---

[1] Additional warnings are provided in Section 724.015 but are not relevant to the present case.

introduction of evidence obtained in violation of Texas laws, it may only be invoked to suppress evidence when the Texas law violated is related to the purpose of the exclusionary rule—to deter unlawful actions that violate the rights of criminal suspects in acquiring evidence for prosecution. *Id.*, at 459.

In *Schafer v. State*, an 18-year-old defendant was arrested under suspicion of driving while intoxicated. *Schafer v. State*, 95 S.W.3d 452, 453 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). The arresting officer placed the defendant in the back of his squad car and "told [him] he was going to [the station] for a breath test," which the defendant testified he understood to mean he was going to take a breath test whether he wanted to or not. *Id.* At the police station, the officer read the DIC-24 form warnings to the defendant. *Id.* After receiving the warnings, but without being given a written copy of the warnings (as the statute requires), the defendant agreed to take a breathalyzer test. *Id.*, at 454. The test results showed he had an alcohol concentration of .185 and he was subsequently convicted of driving while intoxicated. *Id.* On appeal, the defendant contended the trial court abused its discretion in not suppressing the test results because he was not given a written copy of the DIC-24 warnings; therefore, the results were obtained in violation of the law and should have been excluded under Article 38.23. *Id.* He asserted his consent to the test was unknowing and involuntary because of this failure and testified that when he subsequently read the statutory warnings in his attorney's office he only then understood he had the choice of refusing the breath test. *Id.*, at 457.

In rejecting this argument, the *Schafer* court noted Article 38.23 of the Texas Code of Criminal Procedure only excludes evidence *obtained* in violation of a provision of Texas law. *Schafer*, 95 S.W.3d at 455. It observed the Texas Court of Criminal Appeals had already held

evidence not obtained as a result of the violation of Texas law was not subject to the exclusionary rule because there is no causal connection between the illegal conduct by the police and the acquisition of the evidence. *Id*., (*citing Gonzales v. State*, 67 S.W.3d 910, 912 (Tex.Crim.App. 2002)). Therefore, the burden rested on the defendant to show a causal connection between the improper warning and the obtaining of his consent to the breath test. *Id*. While the defendant had testified that once he read the DIC-24 in his attorney's office he understood he could refuse the test and would have done so if he "had known then what he knows now," the court concluded his testimony was not evidence he would have refused the breath test had he been given the written warnings. *Id*., 457. Because the failure to give the written warning was not the cause of the police obtaining the results of the breath test, the purpose of Article 38.23 was not implicated and the trial court did not abuse its discretion in denying his motion to suppress. *Id*.

### *Analysis*

Here, Barrera contends Officer Alegre's signature on the DIC-24 representing he had read the warnings to Barrera, when in fact he had only been told Officer Jurado had read him the warnings, required the trial court to suppress the results of his blood test for alcohol because Alegre admitted it was not he but Jurado who actually read the warnings to him. Therefore, he argues, there is no evidence—other than Officer Alegre's assertion—that he was ever read the warnings. While Barrera acknowledges that the officer signing the DIC-24 does not have to be the arresting officer, he asserts the signing officer is required to be present when the warnings are read, and cites in support of his claim *Tex. Dep't of Pub. Safety v. Walter*, 979 S.W.2d 22, 24-5 (Tex.App.--Houston [14th Dist.] 1998, no pet.). Barrera has not, however, provided any evidence of how the improper administration of the warnings, if they were improper, resulted in the police obtaining

his blood.[2]   Barrera did not submit voluntarily to the blood draw after being read his warnings but refused them outright.   As already noted, courts of this state have acknowledged that if a causal connection exists between an improper warning and a suspect's decision to voluntarily provide a specimen, the evidence may be suppressed under Article 38.23 of the Texas Code of Criminal Procedure.   *Schafer*, 95 S.W.3d at 455, (*citing Gonzalez*, 67 S.W.3d at 912; *Sandoval v. State*, 17 S.W.3d 792, 796 (Tex.App.--Austin 2000, pet. ref'd)).   Unlike the defendant in *Schafer*, Barrera has not even contended he would have made a different choice regarding a voluntary blood draw had he been given the warnings he asserts were never given to him, much less that the officers would not have obtained his blood but for the improper DIC-24 form reading.   The burden of proof is on the defendant to show a causal connection between the improper warning and the acquisition of the evidence.   *Id.*   Because Barrera has failed to make that showing here, his first and second issues are overruled.

## The Search-Warrant Affidavit

In his third issue, Barrera contends the affidavit used to obtain a search warrant for his blood did not comply with the requirements of Article 18.01(c) of the Texas Code of Criminal Procedure.   Specifically, he argues the affidavit does not state his blood was the thing to be seized or why his blood constituted evidence of the alleged crime, and therefore the magistrate could not have made a finding of probable cause.   The State asserts this issue was not preserved because Barrera did not address it during the hearing on the motion to suppress, and further assert he

---

[2]  Barrera also does not discuss the purpose of the DIC-24 warnings, which are to inform a suspect of the consequences *of his refusal* to voluntarily provide a specimen, the relevant consequences here being the State's ability to introduce evidence that he refused the request, as well as a lengthier suspension of his driver's license.   *See* TEX.TRANSP.CODE ANN. § 724.015.

affirmatively stated "no objections" when the blood test was later offered at trial, thus waiving error. Alternatively, the State contends the affidavit for the search warrant was not defective because Article 18.01(c) simply requires the affidavit set forth substantial facts establishing probable cause, which it sufficiently did in this case.

### *Standard of Review*

Because the State has asserted Barrera did not preserve the affidavit issue, we address that contention first. Preservation of error is a systemic requirement on appeal. *Moore v. State*, 295 S.W.3d 329, 333 (Tex.Crim.App. 2009). Appellate courts have a duty to ensure that a claim is preserved in the trial court before addressing its merits. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex.Crim.App. 2010)(op. on rehearing).

### *Applicable Law*

To preserve an issue for review, a party must have presented the trial court with a timely request, objection, or motion stating the specific grounds for the desired ruling, and the trial court must have ruled on the request, objection, or motion. TEX.R.APP.P. 33.1(a)(2); *State v. Ordonez*, 156 S.W.3d 850, 851 (Tex.App.--El Paso 2005, no pet.), *cert. denied*, 549 U.S. 1310, 127 S.Ct. 1888, 167 L.Ed.2d 374 (2007). An adverse ruling on a pretrial motion to suppress will typically suffice to preserve error on appeal, even if a defendant does not specifically object to the evidence when it is later offered at trial. *Thomas v. State*, 408 S.W.3d 877, 881 (Tex.Crim.App. 2013). But when the complained-of evidence is eventually proffered at trial, if a defendant states he has "no objection" to the evidence, absent more, he signals an unambiguous intent to abandon the claim of error that was earlier preserved. *Id*., at 884. To prevent waiver in that situation, a defendant does not necessarily need to have move a qualifying statement, but the reviewing court

10

should consider the entire context of the record in which the "no objection" was stated.  *Id.*, at 885.  If the record as a whole plainly demonstrates the defendant did not intend, nor did the trial court construe, his statement of "no objection" to constitute an abandonment of a claim of error he earlier preserved for appeal, then the reviewing court should not regard the claim as waived but should resolve it on its merits.  *Id.*

*Analysis*

At the hearing on the motion to suppress, Barrera stated as follows:

[Counsel]:     Your Honor, specifically we're seeking two things:  One is the blood test.  The blood test was obtained as a result of an improper statutory warning by the officers.  You will -- I anticipate you're going to hear testimony from two officers.  One of them allegedly read him the DIC-24; the other one signed it.

                              .                    .                    .

[The Court]:   Very well.

[Counsel]:     The second thing we're after, Judge, is, I reviewed the video.  And on paragraph two of my motion, it says, To ensure that evidence that the State would seek to admit is inadmissible and to prevent from jury -- the jury from being prejudiced.
                      Judge, that video has no evidentiary value whatsoever.  It's completely prejudicial.  It shows Mr. Barrera on the hood of the car, being manhandled, if you will, by the officers.  He doesn't do any field sobriety tests.  His statutory warnings are not read on that video.  And then Officer Alegre, two or three times, comments either to the other officer or to the -- the witness that he is going to jail because he is intoxicated.  He repeats it two or three times: He is intoxicated.
                      These videos are captured by the police department for the SFSTs or for the reading of the DIC-24.  Those things do not appear in this video. There is no evidentiary value.  It's completely prejudicial.  So we are asking to keep that video out.  If the Court wants to look at it in camera, that's okay with me.  That way, the Court can take additional time.  But I don't want that video in because it's got no evidentiary value as to intoxication.  So those are the things we're asking, Judge.

11

[The Court]: Those two issues.

[Counsel]: Yes, sir.

The only mention of the affidavit supporting the search warrant was a brief reference during cross-examination of Officer Alegre when Barrera was establishing that Alegre had not been the one to read him the DIC-24 warnings:

[Counsel]: Okay. So in [the signed DIC-24], saying that, I certify and that I have read him this orally and in writing, that's not true, is it?

[Alegre]: No, I didn't. I completely get what you're saying.

[Counsel]: Okay. When you applied for a warrant with Judge Dominguez, you also gave him the same report, right?

[Alegre]: Which would be . . .

[Counsel]: The same complaint affidavit?

[Alegre]: Yes.

[Counsel]: Okay. And he used those same facts that we -- that are before this Court to sign that warrant?

[Alegre]: Yes.

Following this exchange, Barrera immediately pivoted to questioning Alegre about the dashcam video. Based on this record, Barrera did not preserve his affidavit claim for review.

The trial court specifically asked the grounds for Barrera's suppression motion, and neither ground he asserted concerned the search warrant. His brief mention of the affidavit while discussing the DIC-24 issue was not sufficient to alert the trial court that he was also attacking the sufficiency of the affidavit, which he was required to do to preserve the issue for review. *Ordonez*, 156 S.W.3d at 851. Further, Barrera later stated, "no objections," to the introduction of

12

the blood-test results. As noted, if a defendant states he has "no objections" to the evidence, absent more, he signals an unambiguous intent to abandon a claim of error that was earlier preserved. *Thomas*, 408 S.W.3d at 884. Viewing the record as a whole, it was by no means clear to the trial court that Barrera, in stating "no objections," intended to preserve an issue only touched on in passing during the earlier suppression hearing. Accordingly, Barrera's third issue was not preserved.

Even had the issue been preserved, we review an affidavit in support of a search warrant under a highly deferential standard, interpreting the affidavit in a commonsensical and realistic manner, and deferring to all reasonable inferences that a magistrate could have made. *Jones v. State*, 338 S.W.3d 725, 733 (Tex.App--Houston [1st Dist.] 2011, pet. granted)(op. on rehearing)*(citing Rodriguez v. State,* 232 S.W.3d 55, 61 (Tex.Crim.App. 2007)), *aff'd*, 364 S.W.3d 854 (Tex.Crim.App. 2012). We have reviewed the affidavit and are satisfied it supported the magistrate's finding of probable cause. Officer Alegre's affidavit alleged Barrera had committed the offense of driving while intoxicated. It recounted the two accidents—the first crash into Jerry and the subsequent one after fleeing the scene and smashing into the O'Reilly sign. It stated Officer Alegre "could observe the Defendant to have a strong odor of alcohol emanating from his breath and or person, slurred speech, red blood shot eyes, and to be moving lethargically (really slow)." It recounted that Barrera was escorted to the front of Alegre's police car and was asked to participate in a field-sobriety test. It stated that Barrera refused the test and then laid down on the hood of the car. It further stated Alegre again asked Barrera if he would cooperate, to which Barrera responded that the officer should call his lawyer. Finally, it stated Officer Jurado requested a blood specimen from Barrera and stated Barrera refused to provide a blood specimen.

13

Interpreting the affidavit in a commonsensical and realistic manner and deferring to all reasonable inferences that could have been made, the magistrate could have reasonably concluded: (1) Law Enforcement was conducting an investigation as to whether Barrera had committed the offense of driving while intoxicated; (2) his blood could provide evidence of his alleged intoxication; and (3) his blood was the thing to be searched. *Jones*, 338 S.W.3d at 733. Barrera's third issue is overruled.

## CONCLUSION

Having overruled Issues One through Three, the judgment of the trial court is affirmed.


December 14, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

14