COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-214-CR
 
  
DANNY 
LEE BELL, SR.                                                            APPELLANT
A/K/A 
DANNY LEE BELL
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 372ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        Appellant 
appeals from his conviction by a jury for the offense of murder. In six points, 
appellant argues that the trial court erred by (1) failing to include in its 
charge to the jury an instruction on causation as defined by section 6.04(a) of 
the penal code, (2) including in its charge to the jury an instruction on the 
law of parties as defined by section 7.02(a)(2) of the penal code, (3) 
submitting a supplemental charge to the jury on the issue of transferred intent 
under section 6.04(b) of the penal code, (4) denying appellant’s motion to 
suppress his written statement, (5) denying appellant’s motion to suppress 
evidence seized from his car, and (6) including in its judgment an affirmative 
finding of the use of a deadly weapon. We affirm.
II. Background Facts
        On 
January 29, 2000, appellant and his girlfriend Amy Burdick went to the Pink 
Poodle lounge in Fort Worth.  While they were there, appellant’s father, 
who was also at the Pink Poodle that night, got into an argument with Kevin 
Murphy, who worked at the lounge.  In the early morning hours of January 
30, Kevin Murphy and James Thompson, a customer, left the Pink Poodle and 
started walking across the parking lot toward the cafe next door.  
Appellant and Burdick were in the parking lot at the time, and Burdick got into 
an argument with Thompson. Appellant and Burdick then got into appellant’s 
car, a maroon Ford Thunderbird.  Appellant was driving and Burdick was in 
the passenger seat.  They sped through the parking lot, hitting 
Thompson.  They left the parking lot without stopping to help Thompson, who 
later died of his injuries.
        Cathy 
Collins had known appellant for around twenty years or more.  Collins and 
her friend Rhonda Burcham lived in a house near the Pink Poodle and were at the 
Pink Poodle that night.  Both later told the police that appellant and 
Burdick stopped by their house that night and that appellant told them that he 
had meant to hit Murphy with his car.  Burcham told the police that 
appellant said that he had meant to hit Murphy but had hit Thompson instead.
        Fort 
Worth police arrested appellant at his aunt’s home in Tolar, Texas ten days 
later.  Fort Worth police found appellant’s car in nearby Somervell 
County.  In a statement to the police, appellant said that on January 30, 
Burdick and Thompson had argued in the parking lot of the Pink Poodle.  
Appellant stated that he was just trying to get Burdick out of there and that he 
drove fast through the parking lot to avoid a confrontation between Burdick and 
Thompson.  According to appellant, as he drove past Thompson, Burdick 
opened the passenger door, hitting Thompson.  She then yelled, “Go, go, 
go.  I got the mother******.”  Appellant stated that he did not 
intend to hit Thompson.  Appellant pled not guilty to one count of murder.
        Before 
his trial, appellant filed several motions to suppress the evidence seized as a 
result of his arrest, his oral and written statements, and the physical evidence 
obtained from his car.  The trial court denied appellant’s motions.  
A jury found him guilty of murder and assessed his punishment at life 
imprisonment.  Because appellant’s fourth and fifth points are 
potentially dispositive of his appeal, we will address those points first.
III. Appellant’s Written Statement
        In 
his fourth point, appellant argues that the trial court erred by denying his 
motion to suppress his written statement.  He argues that his statement 
resulted from an illegal arrest based on a warrant that lacked probable cause, 
resulted from violations of articles 15.18 and 15.19 of the code of criminal 
procedure, and was involuntary.
        We 
review a trial court's ruling on a motion to suppress evidence under a 
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 
327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997). In reviewing the trial court's decision, we do not engage in 
our own factual review. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. 
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 
2003, no pet.). The trial judge is the sole trier of fact and judge of the 
credibility of the witnesses and the weight to be given their testimony. State 
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard, 987 
S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total 
deference to the trial court's rulings on (1) questions of historical fact and 
(2) application-of-law-to-fact questions that turn on an evaluation of 
credibility and demeanor. Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. 
Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.—Fort 
Worth 2004, pet. filed); Harrison v. State, 144 S.W.3d 82, 85 (Tex. 
App.—Fort Worth 2004, pet. granted); Best, 118 S.W.3d at 861-62.  
However, when the trial court’s rulings do not turn on the credibility and 
demeanor of the witnesses, we review de novo a trial court's rulings on mixed 
questions of law and fact.  Johnson, 68 S.W.3d at 652-53.
        A. Arrest Warrant Affidavit
        Appellant 
argues that the affidavit drafted by Detective Jose Antonio Hernandez in support 
of the warrant for appellant’s arrest fails to state sufficient facts from 
which a neutral and detached magistrate could determine that probable cause 
existed to believe that appellant murdered Thompson.  An affidavit 
supporting an arrest warrant “must provide the magistrate with sufficient 
information to support an independent judgment that probable cause exists to 
believe that the accused has committed an offense.”  Ware v. State, 
724 S.W.2d 38, 39-40 (Tex. Crim. App. 1986).  Mere conclusions in the 
affidavit are not sufficient. Id. at 40.
        For 
an arrest to be justified under the Fourth Amendment, there must be probable 
cause to believe that a person has engaged in or is engaging in criminal 
activity.  Ballman, 157 S.W.3d at 68.  We apply a deferential 
standard of review when reviewing the propriety of an arrest with a 
warrant.  See Swearingen v. State, 143 S.W.3d 808, 811 (Tex. 
Crim. App. 2004); Davis v. State, 144 S.W.3d 192, 196-97 (Tex. 
App.—Fort Worth 2004, pet. ref’d) (op. on reh’g).  We look to the 
“totality of the circumstances” regarding the information contained in the 
affidavit. Davis, 144 S.W.3d at 196-97.  However, our review is 
limited to examining the four corners of the affidavit to determine whether 
probable cause exists.  Id. at 197.
        Here, 
Detective Hernandez stated in the arrest warrant affidavit that several 
witnesses, including Kevin Murphy, saw a white male and a white female hit 
Thompson with their car after arguing with him.  Thompson died several days 
later.  Detective Hernandez stated that he met with Cathy Collins and 
Rhonda Burcham on February 7, 2000 and that both women told him that appellant 
had visited their house the night Thompson was hit and had told them that he had 
tried to hit Murphy with his car.  According to Burcham, appellant said 
that he had tried to hit Murphy, but had hit Thompson instead.  Further, 
Detective Hernandez stated that both women identified pictures of appellant and 
Burdick from a photo line-up as the persons who came to their house that night.
        Detective 
Hernandez’s affidavit contained specific facts based on the personal 
observations of Murphy, Collins, Burcham, and Ronald Schultz, who were 
identified in his affidavit and interviewed by him.  See Matamoros v. 
State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (holding that a probable 
cause affidavit is sufficient if it specifies a named informant as supplying the 
information upon which probable cause is based and is sufficiently detailed to 
suggest direct knowledge on the informant's part.)  We conclude that these 
facts provided the magistrate with a substantial basis to make a probable cause 
determination that appellant committed murder.
        B. 
Articles 15.18 and 15.19 of the Code of Criminal Procedure
        Appellant 
also argues that his written statement should have been suppressed because it 
resulted from violations of articles 15.18 and 15.19 of the code of criminal 
procedure.  Tex. Code Crim. Proc. 
Ann. arts. 15.18, 15.19 (Vernon 2005).  Article 15.18 of the code of 
criminal procedure requires that a person arrested under a warrant issued in a 
county other than the one in which the person is arrested be taken before a 
magistrate of the county in which the person was arrested.  Id. art. 
15.18.  The magistrate shall take bail, if allowed by law, and immediately 
transmit the bond taken to the court having jurisdiction of the offense.  Id.  
According to article 15.19, if the person fails or refuses to give bail, he 
shall be committed to the jail of the county in which he was arrested.  Id. 
art. 15.19.
        Article 
38.23 provides that no evidence obtained by an officer in violation of the 
Constitution or laws of the State of Texas shall be admitted in evidence against 
the accused in a criminal case.  Id. art. 38.23(a) (Vernon 
2005).  However, evidence is not “obtained . . . in violation” of the 
law if there is no causal relationship between the illegal conduct and the 
acquisition of the evidence.  Gonzales v. State, 67 S.W.3d 910, 912 
(Tex. Crim. App. 2002).
        Fort 
Worth police officers and Hood County sheriff’s deputies arrested appellant at 
his aunt’s house in Hood County under an arrest warrant that was issued in 
Tarrant County.  He was Mirandized[1] and 
taken to the Hood County courthouse, where a magistrate advised him of his 
rights again.  After the magistrate released appellant into their custody, 
the Fort Worth police officers transported appellant to Fort Worth, where 
Detective Hernandez Mirandized him again before interviewing him.  
Appellant signed a form that contained a statement of his rights.  
Appellant then gave a written statement in which he voluntarily waived his 
rights.
        Appellant 
argues that he should have been placed in the Hood County jail after being taken 
before the Hood County magistrate rather than being transported to Tarrant 
County.  Without deciding whether officials violated articles 15.18 and 
15.19, we conclude that appellant presented no evidence that he would not have 
given a written statement had he been booked into the Hood County Jail.  
Appellant has not shown that the alleged violations caused him to involuntarily 
give his written statement.  In fact, appellant has not shown that the 
alleged violations resulted in anything other than his expedited return to Fort 
Worth.  Therefore, appellant has not shown a causal connection between the 
alleged violations of the code of criminal procedure and the acquisition of his 
written statement.
        C. Involuntariness
        Appellant 
also argues that he did not voluntarily give his written statement.  We 
must examine the totality of the circumstances to determine whether a statement 
was given involuntarily.  Creager v. State, 952 S.W.2d 852, 856 
(Tex. Crim. App. 1997).  The ultimate question is whether the defendant’s 
will was overborne.  Id.  To answer this question, courts look 
at circumstances such as length of detention, incommunicado or prolonged 
interrogation, denying family access to a defendant, refusing a defendant's 
request to telephone a lawyer or family, and physical brutality.  Armstrong 
v. State, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985), overruled on other 
grounds, Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998).
        Appellant 
was arrested around 11:00 a.m. on February 10, 2000 and was given his Miranda 
warnings by the arresting officer.  A Hood County magistrate advised 
appellant of his rights before releasing him into the custody of the Fort Worth 
police officers.  The police transported appellant to the Fort Worth police 
station.  There, after noticing that appellant had several scrapes, 
Detective Hernandez made appellant take his clothes off so that a crime scene 
officer could photograph his body.  Detective Hernandez again read 
appellant his Miranda warnings.  Appellant waived his rights and 
initialed a form containing a written statement of his rights.  Detective 
Hernandez began interviewing appellant around 2:00 p.m. that day, and appellant 
signed his written statement around 10:00 p.m. that night.  Appellant never 
indicated that he did not want to answer any more questions or that he wanted to 
speak to a lawyer.  Moreover, there is no evidence that police physically 
abused appellant.  Although appellant was in handcuffs and leg shackles 
during the interview, there is no evidence that appellant requested but was 
denied food, water, or bathroom breaks.  Based on the totality of the 
circumstances, we conclude that appellant’s written statement was voluntarily 
given.  We overrule appellant’s fourth point.
IV. Evidence from Appellant’s Car
        In 
his fifth point, appellant argues that the trial court erred by denying his 
motion to suppress evidence seized from his car.  Specifically, appellant 
contends that the evidence should have been suppressed because (1) the police 
trespassed onto private property to seize the evidence, (2) the affidavits 
supporting the search warrants lacked probable cause, (3) the police violated 
the code of criminal procedure by removing from Somervell County appellant’s 
car and the evidence seized under the warrant, and 4) the police violated the 
code of criminal procedure by failing to make a proper inventory and return and 
properly maintain the property seized under the Tarrant County search warrant.
        A. Trespass
        Appellant 
argues that evidence seized from his car should be excluded under article 38.23 
because officers committed trespass when they seized the car.  See Tex. Code Crim. Proc. Ann. art. 
38.23.  After appellant was arrested, he told Fort Worth police officers 
that his car was located at the home of Carla Goodwin in nearby Somervell 
County. Appellant’s aunt, Beverly Martin, called Goodwin and told her that the 
police were coming to seize the car.  Fort Worth police drove to 
Goodwin’s residence and were met by an investigator from the Somervell County 
Sheriff’s Office.  The officers had to drive some distance up Goodwin’s 
driveway before they were able to see appellant’s car parked in front of 
Goodwin’s house.  The officers knocked on Goodwin’s door, but no one 
answered.  Police later seized the car and transported it to the Somervell 
County impound yard.
        Article 
38.23(a) does not confer automatic third-party standing on a defendant to 
complain about evidence obtained in violation of the rights of others. Fuller 
v. State, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992), cert. denied, 
508 U.S. 941 (1993); see also Janecka v. State, 739 S.W.2d 813, 830 (Tex. 
Crim. App. 1987) (holding that defendant has no standing to complain of an 
illegal search of another’s residence), cert. denied, 522 U. S. 828 (1997); McArthur 
v. State, 1 S.W.3d 323, 329 (Tex. App.—Fort Worth 1999, pet. ref’d) 
(holding that defendant has no standing to complain of the seizure of phone 
records that belong to defendant’s employer), cert. denied, 531 U.S. 
873 (2000).  Here, appellant has no standing to complain that police 
trespassed on Goodwin’s land when they seized his car.
        B. Search Warrant Affidavits
        Appellant 
argues that the affidavits supporting search warrants issued in Tarrant and 
Somervell Counties failed to set forth sufficient facts from which a magistrate 
could determine there was probable cause to search his car.  In reviewing a 
search warrant affidavit, we must determine whether there is a fair probability, 
not an actual showing, that evidence of a crime will be found in a particular 
place in light of the totality of the facts set forth in the affidavit.  Davis, 
144 S.W.3d at 197.
                1. 
Somervell County
        A 
Somervell County magistrate issued a search warrant authorizing the search of 
appellant’s car. In his affidavit supporting the search warrant, Detective 
Manny Reyes set forth the background facts of the offense.  He also stated 
that appellant and Burdick had given voluntary statements in which they admitted 
hitting Thompson with appellant’s car.  In light of these facts, there 
was a fair probability that evidence of Thompson’s murder would be found in or 
on appellant’s car.  Therefore, the affidavit provided the magistrate 
with a substantial basis to conclude that a search would uncover evidence of a 
crime.
        2. Tarrant County
        After 
the Somervell County warrant was executed, a Tarrant County magistrate issued 
another search warrant for appellant’s car.  Like the Somervell County 
search warrant affidavit, the Tarrant County search warrant affidavit set forth 
the background facts of the offense and stated that Burdick and appellant had 
given voluntary statements in which they admitted hitting Thompson with 
appellant’s car.  The affidavit explained that certain evidence had been 
obtained under the Somervell warrant but that additional evidence needed to be 
collected from appellant’s car, which was being stored in the Fort Worth 
Police Department Auto Pound.  Specifically, the affidavit requested 
permission to analyze the passenger side windshield wiper of appellant’s car 
and glass fragments inside appellant’s car in order to search for traces of 
Thompson’s blood and fibers from Thompson’s clothes.  From these facts, 
there was a fair probability that additional evidence of Thompson’s murder 
would be found in appellant’s car, and therefore we hold that the magistrate 
had a substantial basis for concluding that probable cause existed to issue the 
search warrant.
        C. Articles 18.09, 18.10, and 18.11 of the Code of 
Criminal Procedure
        Appellant 
argues that evidence obtained from his car should have been suppressed because 
officers violated articles 18.09, 18.10, and 18.11 of the code of criminal 
procedure. Tex. Code Crim. Proc. Ann. arts. 18.09, 
18.10, 18.11 (Vernon 2005).  Article 18.09 requires that the officer who 
seizes property under a search warrant carry the property before a 
magistrate.  Id. art. 18.09.  According to article 18.10, after 
returning a search warrant, the officer shall deliver to the magistrate a copy 
of the inventory of the property taken into his possession under the 
warrant.  Id. art. 18.10.  Article 18.10 also requires the 
officer to retain custody of the property until the magistrate issues an order 
directing the manner of the safekeeping of the property and prohibits the 
removal of the property from the county in which it was seized without an order 
approving the removal from a magistrate in the county in which the warrant was 
issued.  Id.  Article 18.11 requires that property seized under 
a search warrant be kept as provided by the magistrate’s order issued under 
article 18.10.  Id. art. 18.11.
        In 
the present case, after police executed the Somervell search warrant, they moved 
appellant’s car and the property seized from it to Tarrant County without an 
order from a magistrate in Somervell County authorizing the move.  In 
addition, police did not carry property seized under the Somervell warrant 
before the Somervell County magistrate.  After executing the Tarrant County 
search warrant, police also failed to deliver a copy of the inventory of the 
property seized under the warrant to the magistrate.  However, as we 
discussed earlier, article 38.23 does not require suppression of evidence if 
there is no causal relationship between the illegal conduct and the acquisition 
of the evidence. Tex. Code Crim. Proc. Ann. art. 
38.23(a); Gonzales, 67 S.W.3d at 912.  Appellant has not shown that 
police would not have obtained the evidence from his vehicle had they complied 
with the provisions in the code of criminal procedure relating to the handling 
of evidence seized under a search warrant.  Additionally, appellant has 
made no showing of prejudice.  Appellant argues only that the car may 
have been damaged on its front bumper during the tow.  We overrule 
appellant’s fifth point.
V. Causation
        In 
his first point, appellant argues that the trial court erred by failing to 
include in its charge to the jury an instruction on “causation” as defined 
by section 6.04(a) of the penal code.  See Tex. Penal Code Ann. § 6.04(a) (Vernon 
2003).
        We 
look to article 36.19 of the code of criminal procedure for the standards of 
appellate review of claimed jury charge error.  Tex. Code Crim. Proc. Ann. art. 36.19 
(Vernon 1981); Trevino v. State, 100 S.W.3d 232, 242 (Tex. Crim. App. 
2003). Appellate review of error in a jury charge involves a two-step process. Abdnor 
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we 
must determine whether error occurred; if so, we must then evaluate whether 
sufficient harm resulted from the error to require reversal.  Trevino, 
100 S.W.3d at 242; Abdnor , 871 S.W.2d at 731-32.  Error in the 
charge, if timely objected to in the trial court, requires reversal if the error 
was “calculated to injure [the] rights of the defendant,” which means no 
more than that there must be some harm to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19; see 
also Trevino, 100 S.W.3d at 242; Abdnor, 871 S.W.2d at 731-32; Almanza 
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).  
In other words, a properly preserved error will call for reversal as long as the 
error is not harmless.  Almanza, 686 S.W.2d at 171.  In making 
this determination, “the actual degree of harm must be assayed in light of the 
entire jury charge, the state of the evidence, including the contested issues 
and weight of probative evidence, the argument of counsel and any other relevant 
information revealed by the record of the trial as a whole.”  Id.; 
see also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).
        Error 
due to erroneous omissions in the jury charge can result from either 
“omissions of issues upon which a trial court has a duty to instruct without a 
request from either party or issues that have been timely brought to the trial 
court’s attention.”  Huizar v. State, 12 S.W.3d 479, 483 (Tex. 
Crim. App. 2000) (quoting Posey v. State, 966 S.W.2d 57, 63-64 (Tex. 
Crim. App. 1998)); Bluitt v. State, 70 S.W.3d 901, 904-06 (Tex. 
App.—Fort Worth 2002), rev’d on other grounds, 137 S.W.3d 51 (Tex. 
Crim. App. 2004); see also Tex. 
Code Crim. Proc. Ann. arts. 36.14, 36.15 (Vernon Supp. 2004-05), art. 
36.16.  An accused is entitled to an instruction on every defensive issue 
raised by the evidence regardless of whether the evidence is strong, feeble, 
unimpeached, or contradicted, and even if the trial court thinks that the 
evidence should not be believed.  Warren v. State, 565 S.W.2d 931, 
933-34 (Tex. Crim. App. 1978).
        According 
to section 6.04(a) of the penal code, “A person is criminally responsible if 
the result would not have occurred but for his conduct, operating either alone 
or concurrently with another cause, unless the concurrent cause was clearly 
sufficient to produce the result and the conduct of the actor clearly 
insufficient.”  Tex. Penal Code 
Ann. § 6.04(a).  Section 6.04(a) requires the State to establish a 
“but for” causal connection between the defendant’s conduct and the 
resulting harm.  Robbins v. State, 717 S.W.2d 348, 351 (Tex. Crim. 
App. 1986).  As the Robbins court explained,
   
If concurrent causes are present, two possible combinations exist to satisfy the 
“but for” requirement: (1) the defendant’s conduct may be sufficient by 
itself to have caused the harm, regardless of the existence of a concurrent 
cause; or (2) the defendant’s conduct and the other cause together may 
be sufficient to have caused the harm.
 
Id.  
Section 6.04(a) limits the “but for” causality by providing that the 
defendant cannot be convicted if the additional cause, other than defendant’s 
conduct, is clearly sufficient by itself to produce the result, and the 
defendant’s conduct by itself is clearly insufficient to produce the 
result.  Id.
        Under 
appellant’s defensive theory, the cause of Thompson’s death was not 
appellant’s act of driving the car but Burdick’s independent act of opening 
the car door.  In his statement to the police, appellant claimed that he 
did not intend to hit Thompson with the car and that he was unaware that Burdick 
intended to open the car door to hit Thompson.  But appellant presented no 
evidence that the concurrent cause was clearly sufficient by itself to produce 
the result.  That is, appellant presented no evidence that Burdick’s act 
of opening the door, by itself, was sufficient by itself to cause Thompson’s 
death.  Absent appellant’s act of actually driving the car, there is no 
evidence that Burdick’s act of opening the car door would have caused 
Thompson’s death.  But appellant’s act of driving the car and 
ultimately hitting Thompson could have been sufficient by itself to have caused 
Thompson’s death.  Therefore, the trial court did not err by failing to 
include in the jury charge an instruction on concurrent causation.  We 
overrule appellant’s first point.
VI. Law of Parties
        Appellant 
argues in his second point that the trial court erred by including in its charge 
to the jury an instruction on the law of parties under section 7.02(a) of the 
penal code.  See Tex. Penal 
Code Ann. § 7.02(a) (Vernon 2003).  Appellant contends that the 
evidence showed either that he did not intend to commit the crime or that he 
intended to commit the crime but acted alone.
        A 
person is criminally responsible as a party to an offense if the offense is 
committed by his own conduct, by the conduct of another for which he is 
criminally responsible, or by both.  Id. § 7.01(a).  Section 
7.02(a)(2) of the penal code provides that a person is criminally responsible 
for an offense committed by the conduct of another if “acting with intent to 
promote or assist the commission of the offense, he solicits, encourages, 
directs, aids, or attempts to aid the other person to commit the 
offense.”  Id. § 7.02(a)(2).  Generally, the trial court may 
instruct the jury on the law of parties if there is sufficient evidence to 
support a jury verdict that the defendant is criminally responsible under the 
law of parties. Ladd v. State, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999), cert. 
denied, 529 U.S. 1070 (2000).  The court may consider the events that 
took place before, during, and after the commission of the crime.  See 
Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); Goff v. 
State, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996), cert. denied, 520 
U.S. 1171 (1997).
        In 
the present case, there is evidence that appellant and Burdick had argued with 
Thompson the night he was hit by the car.  In his statement to police, 
appellant said that Burdick had told him that he should “kick [Thompson’s] 
ass” and that she wanted to “get [Thompson].”  He also said that he 
was “a little ticked” that Thompson had called Burdick a whore.
        Appellant 
admitted that he drove the car that hit Thompson but stated that he did not 
intend to hit Thompson and that Thompson was struck when Burdick opened her car 
door.  According to statements given to the police by Collins and Burcham, 
however, appellant told them that he had meant to hit Murphy but had hit 
Thompson instead.  Physical evidence suggested that the passenger door had 
struck Thompson; the passenger door window was broken out and there was damage 
to the passenger door itself.  However, there was also damage to the 
windshield on the passenger side of the car, suggesting appellant had been hit 
by the front of the car.  Also, eyewitness testimony showed that appellant 
was the driver, that he revved the car engine before striking Thompson, and that 
he drove fast through the parking lot.
        Based 
on these facts, we conclude that there was sufficient evidence for the jury to 
find that appellant acted with the intent to promote or assist the commission of 
murder and solicited, encouraged, directed, aided, or attempted to aid Burdick 
in murdering Thompson.  Accordingly, the trial court did not err by 
including an instruction on the law of parties in its charge to the jury.  
We overrule appellant’s second point.
VII. Transferred Intent
        Appellant 
argues in his third point that the trial court erred by submitting a 
supplemental charge to the jury on the issue of transferred intent.  
Section 6.04(b) of the penal code codifies the doctrine of transferred intent, 
which is a theory of criminal responsibility.  Chimney v. State, 6 
S.W.3d 681, 700 (Tex. App.—Waco 1999, pet. ref’d). Section 6.04(b) provides,
   
A person is nevertheless criminally responsible for causing a result if the only 
difference between what actually occurred and what he desired, contemplated, or 
risked is that:
  
(1) 
a different offense was committed; or
  
(2) 
a different person or property was injured, harmed, or otherwise affected.
 
Tex. Penal Code Ann. § 6.04(b).  
Under the statute, a defendant can be “criminally responsible” for the death 
of another if he actually caused the victim’s death while acting with the 
intent to kill a different person, even if he did not intend to kill the actual 
victim.  Chimney, 6 S.W.3d at 700.  Transferred intent is an 
issue to be determined during the guilt-innocence phase of the trial.  Id.
        The 
trial court’s original charge to the jury included an instruction on the law 
of transferred intent in the abstract portion of the charge but did not address 
the law of transferred intent in the application paragraphs.  The State 
referred to transferred intent during its closing argument, and appellant 
objected, arguing that the State’s argument was improper because the charge 
did not contain an application paragraph on the issue of transferred 
intent.  The trial court sustained appellant’s objection and instructed 
the jury to disregard the State’s last statement referring to transferred 
intent.  The trial court proposed giving the jury a supplemental charge 
that would include an application paragraph on the law of transferred 
intent.  Appellant objected, arguing that the evidence did not support an 
instruction on transferred intent and that the State waived the issue of 
transferred intent by not requesting that an application paragraph be included 
in the charge.  The trial court overruled appellant’s objection and 
submitted a supplemental charge to the jury with an application paragraph on the 
law of transferred intent.
        Appellant 
contends that the State waived any error in the trial court’s failure to 
include an application paragraph on transferred intent in its original charge 
and that the trial court should have sustained his objection to the State’s 
improper argument, instructed the jury to disregard, and done nothing 
more.  We disagree.
        A 
trial court’s charge to the jury must include not only an abstract statement 
of the law but also an application of the law to the facts in the case. Tex. Code Crim. Proc. Ann. art. 36.14; Gray 
v. State, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004); Williams v. 
State, 622 S.W.2d 578, 579 (Tex. Crim. App. [Panel Op.] 1981).  The 
omission of the application portion of the charge is trial court error.  Gray, 
152 S.W.3d at 127-28; Barrera v. State, 982 S.W.2d 415, 416 (Tex. Crim. 
App. 1998).  According to section 36.16 of the code of criminal procedure, 
“After the argument begins[,] no further charge shall be given to the jury 
unless required by the improper argument of counsel or the request of the 
jury.“  Tex. Code Crim. Proc. Ann. 
art. 36.16.  However, the trial court may, before verdict, withdraw and 
correct its charge if an erroneous charge has been given.  Bustillos v. 
State, 464 S.W.2d 118, 125 (Tex. Crim. App. 1971); Roberson v. State, 
113 S.W.3d 381, 384 (Tex. App.—Fort Worth 2003, pet. ref’d).  In the 
present case, the original charge submitted to the jury was erroneous because it 
did not include an application paragraph on the law of transferred intent.  
See Gray, 152 S.W.3d at 127-28; Barrera, 982 S.W.2d at 
416.  Therefore, the trial court did not err when it corrected the 
erroneous charge by giving the jury a supplemental charge applying the law of 
transferred intent to the facts in the case.[2]
        The 
purpose behind requiring an objection to preserve error on appeal is to give the 
trial court or opposing party the opportunity to correct the error or remove the 
basis for the objection.  See Martinez v. State, 22 S.W.3d 504, 507 
(Tex. Crim. App. 2000).  Here, although the State did not object to the 
original jury charge on this issue, appellant objected to the State’s closing 
argument and thereby called the trial court’s attention to the lack of an 
application paragraph on transferred intent in the jury charge.  The trial 
court then corrected the error by submitting a supplemental charge to the jury 
with a paragraph applying the law of transferred intent to the facts in the 
case.  Because the State is not the party appealing the trial court’s 
ruling and judgment, it was not required to preserve error.  Accordingly, 
waiver does not apply. See Garza v. State, 126 S.W.3d 79, 81-82 (Tex. 
Crim. App. 2004); see also Gaines v. State, 710 S.W.2d 630, 633 
(Tex. App.—Dallas 1986, pet. ref’d) (holding that trial court did not err by 
correcting a jury charge that did not include a necessary application paragraph 
and that the State did not acquiesce in the omission).  We overrule 
appellant’s third point.
VIII. Deadly Weapon
        In 
his sixth point, appellant argues that the trial court erred by including an 
affirmative finding of the use of a deadly weapon in its judgment. In the 
indictment, appellant was charged with intentionally or knowingly causing the 
death of Thompson with a deadly weapon, namely, an automobile.  In its jury 
charge, the trial court instructed the jury that appellant was guilty of murder 
if (1) he intentionally or knowingly caused Thompson’s death by striking him 
with a deadly weapon, namely, an automobile; (2) he intentionally, with the 
intent to cause serious bodily injury to Thomson, committed an act clearly 
dangerous to human life, namely, striking Thompson with a deadly weapon, namely, 
an automobile; (3) Burdick intentionally or knowingly caused Thompson’s death 
by striking him with a deadly weapon, namely, an automobile, and appellant, 
acting with intent to promote or assist the commission of the offense, 
encouraged, directed, aided, or attempted to aid Burdick in the offense; or (4) 
Burdick intentionally, with intent to cause serious bodily injury to Thompson, 
committed an act clearly dangerous to human life, namely, striking Thompson with 
a deadly weapon, namely, an automobile, and appellant, acting with intent to 
promote or assist the commission of the offense, encouraged, directed, aided or 
attempted to aid Burdick in committing the offense.
        On 
the verdict form, the jury stated, “We, the jury find [appellant] guilty of 
the offense of murder, as charged in the indictment.”  In its judgment, 
the trial court stated that “the jury affirmatively finds that [appellant] 
used or exhibited a deadly weapon, to-wit: an automobile during the commission 
of the offense or during the immediate flight therefrom.”
        When 
an affirmative finding is made that a deadly weapon was used or exhibited during 
the commission of a felony offense and that the defendant used or exhibited the 
weapon or was a party to the offense and knew that a deadly weapon would be used 
or exhibited, the trial court must enter that finding in its judgment. Tex. Code Crim. Proc. Ann. art. 42.12, 
§ 3g(a)(2) (Vernon Supp. 2004-05).  A jury makes an affirmative finding 
that a deadly weapon was used or exhibited when it (1) finds the defendant 
guilty as charged in the indictment and the indictment alleged the use of a 
“deadly weapon,” (2) finds the defendant guilty as charged in the indictment 
and, though not specifically pled in the indictment as a deadly weapon, the 
weapon pled is a deadly weapon per se, or (3) affirmatively answers a special 
issue on deadly weapon use.  Davis v. State, 897 S.W.2d 791, 793 
(Tex. Crim. App. 1995); Edwards v. State, 21 S.W.3d 625, 627 (Tex. 
App.—Waco 2000, no pet.).
        Although 
the indictment in the present case charges appellant with using a deadly weapon 
and the jury found appellant guilty as charged in the indictment, appellant 
argues that because the jury charge allowed the jury to convict appellant as a 
party, the jury was required to make an express finding that appellant knew that 
a deadly weapon would be used or exhibited during the commission of the offense. 
We disagree.
        To 
convict appellant of murder under the law of parties, the jury was required to 
find that appellant intended to promote or assist the commission of the 
offense.  See Tex. Penal Code Ann. 
§ 7.02(a)(2). In other words, the jury was required to find that appellant 
intended to promote or assist Burdick in murdering Thompson with a deadly 
weapon, namely, appellant’s car.  Therefore, before the jury could 
convict appellant as a party, it had to find that he knew a deadly weapon would 
be used in the commission of the offense.  See Sarmiento v. State, 
93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  
The trial court did not err by including an affirmative finding of the use of a 
deadly weapon in its judgment.  We overrule appellant’s sixth point.
IX. Conclusion
        Having 
overruled all of appellant’s points, we affirm the trial court’s judgment.
  
   
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
  
 
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: 
July 7, 2005


NOTES
1.  
See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).
2.  
We also note that there was sufficient evidence of transferred intent for the 
trial court to place the issue before the jury.  Both Collins and Burcham 
told police that appellant said that he had meant to hit Murphy.  Further, 
Burcham told police that appellant said he had meant to hit Murphy but had hit 
Thompson instead.