Tony RICE, Appellant,

v.

The STATE of Texas, Appellee.

No. 69967.

Court of Criminal Appeals of Texas, En Banc.

Jan. 30, 1991.

Rehearing Overruled March 6, 1991.

---

Joe E. Griffith, Crockett, for appellant.

Mark Patterson, David P. Weeks, Special Prison Prosecution Unit, Huntsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

The appellant, Tony Rice, was convicted of capital murder for remuneration. V.T. C.A. Penal Code, § 19.03(a)(3). The jury returned affirmative answers to each of the special issues and assessed the death penalty. Article 37.071(b), V.A.C.C.P. The appellant challenges the sufficiency of the State's evidence to prove the aggravating factor of remuneration. At the time of the offense, the appellant was an inmate in the Eastham Unit of the Texas Department of Corrections[1] and a confirmed member of a prison gang called the "Texas Mafia." The decedent, David "Rope" Robidoux, was also a member of the gang.

Robidoux was suspected of being a "snitch" and gang leaders wanted him killed. Since Robidoux had been recently transferred to the Eastham Unit, the "hit" was the responsibility of the "Texas Mafia" members in that unit: the appellant, Darrell Adams, Mark "Red" Fronkiewicz, and Ricky "Chicken Man" Meadows. Adams testified that Robidoux's death was painstakingly planned. A brass rod from a toilet was sharpened. Robidoux was asked by his "brothers" to be in the day room for recreation on the next morning. Since the appellant already had one murder case pending against him, he volunteered to be the one to actually stab and kill Robidoux.

On the morning of December 16, 1984, Adams carried the homemade knife down to the day room in his boot. Accompanied by the appellant, Fronkiewicz, and Meadows, the meeting with Robidoux went according to plan. Before Robidoux arrived in the day room, Adams gave the knife to appellant. They lured Robidoux into a blind spot in the corner of the room where appellant stabbed him twenty-eight times. The four gang members hid the decedent's body under an exercise mat, finished their recreation time, and were returned to their cells.

The "Texas Mafia" was an organized prison gang with a detailed constitution. Gang members were required to read the constitution, live by it and die by it. The gang was founded for one reason; to make money. The money was made primarily by selling drugs in the prison. Members, by the mere fact of their membership, were entitled to share in the profits of the gang's activities. Membership in the gang required members to do anything that was required to further the gang's purpose of making money, including kill.

The indictment that was handed down read:

On or about the 16th day of December, A.D., 1984, Tony Rice did knowingly and intentionally cause the death of an individual, David Robidoux, by stabbing him with a sharp metal object, for remunera-

1. Now the Texas Department of Criminal Justice, Institutional Division ("TDCJ").

tion and the promise of remuneration from the Texas Mafia.

The indictment only alleges the source from which the remuneration was to be paid. It does not allege what the remuneration was, only that it came from the "Texas Mafia."[2] There was no evidence presented that a specific promise existed between appellant and the "Texas Mafia." That is, there was no agreement, even an implicit one, that the appellant would receive compensation or a greater share of the gang's profits for specifically killing Robidoux. There was, however, evidence that a gang member could expect greater "prestige" in the gang by "making a hit."

█ Since appellant has challenged the sufficiency of the State's evidence of remuneration, we must examine what remuneration is. Recent cases have sought to set parameters within which the State's evidence on the issue must fall. See generally, *Beets v. State*, 767 S.W.2d 711 (Tex.Cr. App.1987); *Duff–Smith v. State*, 685 S.W.2d 26 (Tex.Cr.App.1985); *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979); *McManus v. State*, 591 S.W.2d 505 (Tex.Cr. App.1979). From these cases, it is clear that murder for remuneration under V.T. C.A. Penal Code, § 19.03(a)(3) is not limited to murders for hire. We have held that the definition of remuneration does not require the narrow construction requiring payment by a principal to an agent. Rather, remuneration is given a broad definition which, as it pertains to this case, includes the idea of a reward given or received because of some act. *Beets*, supra, at 734.

█ From *McManus* forward, this Court has consistently adhered to the principle that:

> The conduct proscribed by this section of the capital murder statute is the killing of any person in order to receive, or for the purpose of receiving some benefit or compensation. Thus the focus of the criminal culpability is upon the actor's state of mind.

*McManus*, 591 S.W.2d at 513. In *Beets*, we again held:

The focus is on the actor's intent or state of mind: Did the actor kill in the expectation of receiving some benefit or compensation ...?

*Beets*, 767 S.W.2d at 735. Therefore, the State is obligated to offer some evidence of the defendant's intent or state of mind as related to an expectation of remuneration. In *McManus*, this Court found that this element was satisfied by testimony that supported that the appellant acted out of his expectation to receive money for the killing. *McManus*, 591 S.W.2d at 513. In *Beets* and *Duff–Smith* we found that corroborated accomplice-witness testimony confirmed the defendant's intent and/or state of mind regarding the remuneration aspect of the crime. *Beets*, supra, at 735; *Duff–Smith*, 685 S.W.2d at 33. In the instant case, the record is devoid of any such evidence.

█ The State has argued that the remuneration element is satisfied because the appellant killed Robidoux to insure the continuation of his share of the money from the gang's illegal activities and because he expected his status in the gang to be enhanced. We find the argument to be plausible, but legally insufficient to satisfy the element of remuneration. Robidoux was suspected of being a "snitch." Had he exposed the gang's activities, the possibility existed that the profits the gang received from their illegal activities would be put in jeopardy. A rational trier of fact could have found that by shutting Robidoux up permanently, the appellant was insuring his continued share of the gang's profits. Even if we assume that the State's contention is true, we find that the remuneration element as alleged was not satisfied as a matter of law.

We have defined remuneration as a reward given or received because of some act. *Beets*, supra, at 734. The killing must be done for the purpose of receiving some benefit. *McManus*, supra, at 513. The benefit must be received because of the killing. We have consistently held that the

---

**2.** The appellant has also challenged the sufficiency of the indictment. However, we will not

address this claim since we agree that the remuneration element was not satisfied.

focus is on the actors state of mind. The appellant killed Robidoux because the latter was a "snitch." The killing occurred to prevent Robidoux from informing on the gang and to insure the continuation of the gang's activities.

The fact that the appellant killed Robidoux to insure his share of the profits is not enough. While the definition of remuneration is broad, the actor must expect to gain from some benefit *assessed on the death of the victim*. *Beets*, supra, at 736; *McManus*, supra, at 513. In *Beets* we distinguished under our capital scheme, murder for remuneration from other listed means of murder during the course of robbery or kidnapping for purposes of ransom. There we noted that under the remuneration section, the State has the heavy burden of demonstrating that the murder was performed for the reason of pecuniary gain. We found that the nexus between a defendant who kills for pecuniary gain and his motive for that act is more important than the motive of a defendant who kills during the course of other felonious conduct. *Id.*, at 736, n. 4.

■ It is apparent that the appellant's primary motive for killing was to keep Robidoux from exposing the gang. Secondary to that purpose was that by keeping Robidoux quiet, the appellant could expect a continuation of his share of the profits from the gang's illegal activities and an increase in prestige within the gang. There was no agreement that appellant would receive anything because of the killing. The appellant was entitled to share in the profits of the gang by virtue of his membership. While it is true that he might have expected an increase in status in the gang, there was no agreement, even an implicit one, that the same would be assessed on Robidoux's death. Moreover, had there been an agreement that appellant would have received an increase in status, this is too intangible to satisfy the remuneration element. The remuneration must be something more than what appellant was already entitled to receive.

The State contends that if we do not find the remuneration element satisfied in this case, then virtually no gang killing can be considered capital murder. Under the facts of this case the State is correct. *Beets*, 767 S.W.2d at 748 (Clinton, J., dissenting opinion) and 767 S.W.2d at 755 (Teague, J., dissenting opinion). However, it is clear that this section of the statute cannot be extended to cover this situation.

Because we find that the State failed to present sufficient evidence to support the jury's finding of the remuneration element of capital murder, we reverse the judgment of the trial court and enter a judgment of acquittal for the charge of capital murder.

MALONEY, J., not participating.

McCORMICK, Presiding Judge, concurring.

I concur in the judgment of the Court but write to make clear that I do not subscribe to all the language in the majority opinion. I cannot at this time agree with that portion of the penultimate paragraph implying the statute could not be extended to cover the State's theory of prosecution. I believe that, had the evidence shown an agreement, the outcome may have been different. I concur with the majority that the evidence here presented fails to show that remuneration in any form was actually delivered or that there was in fact a specific promise that such would be forthcoming upon completion of the hit.