**James Ray UNDERWOOD, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–91–447–CR, 2–91–448–CR.**

Court of Appeals of Texas,
Fort Worth.

May 19, 1993.

Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Steven W. Conder, Asst., Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and DAY, JJ.

## OPINION

HILL, Chief Justice.

James Ray Underwood appeals his convictions by a jury for solicitation to commit capital murder and for murder. After Underwood pleaded true to two enhancement paragraphs that were in the murder case, the jury assessed his punishment in both cases at life in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine.

Underwood contends in three points of error that the evidence is insufficient to support his conviction for the offense of solicitation to commit capital murder because the State failed to prove the essential element of remuneration; the evidence is insufficient to support his conviction for murder because the State failed to prove that the grand jury used due diligence to ascertain the identity of the unknown deadly weapon used to kill the deceased; and the trial court erred by omitting the element of remuneration from the first application paragraph in the solicitation to commit capital murder charge.

We affirm Underwood's conviction of murder because we hold that the evidence was sufficient to show that the grand jury exercised due diligence in attempting to ascertain the weapon used by Underwood to kill Dewayne Curren. We reverse his conviction of solicitation of capital murder because we hold that the trial court erred by instructing the jury in such a way as to allow them to convict Underwood without finding that the solicitation involved remuneration, even though remuneration, as alleged in the indictment, was descriptive of an essential element of the offense charged. We further hold that the evidence was sufficient to show remuneration.

During the robbery of a former employer, Dewayne Curren, Underwood killed Curren by shooting him with a pistol and beating him with a flashlight-like object.

Subsequently, he talked to David Wayne Burton, a former cellmate to whom he had confessed the murder, about killing two investigators working on the murder case, in exchange for his killing four other people to be named later by Burton. One of the proposed victims was Doris Hembree, the complainant in the offense of solicitation of capital murder.

Underwood asserts in point of error number one that the evidence, when examined in light of the court's charge, is insufficient to support his conviction for the offense of solicitation to commit capital murder because the State failed to prove the essential element of remuneration.

We must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have determined the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

As we have noted, the only element questioned by Underwood is that of remuneration. The Texas Court of Criminal Appeals has held "that the definition of 'remuneration' does not mandate the narrow construction ... as in a strict murder for hire situation." *Beets v. State*, 767 S.W.2d 711, 734 (Tex.Crim.App.1987) (opinion on reh'g). The court said that "[r]emunerate encompasses a broad range of situations, including compensation for loss or suffering and the idea of a reward given or received because of some act." *Id.* We hold that Underwood's offer to kill two persons to be named later by Burton constituted "remuneration" promised by Underwood to Burton in return for his killing Doris Hembree.

Underwood urges that "remuneration" is limited to pecuniary gain, relying on the cases of *Beets, supra,* and *Rice v. State,* 805 S.W.2d 432 (Tex.Crim.App.1991). An examination of both cases shows that neither determined that a nonpecuniary benefit could not qualify as remuneration. Although *Beets* referred in a footnote to "pecuniary gain," that reference was dicta under the facts of that case. *Beets,* 767 S.W.2d at 736–37 n. 4.

We do not believe that it was in any way the intention of the court in that case to limit "remuneration" to pecuniary gain. We believe that the language was used to emphasize that in that case, which did not involve a murder-for-hire situation such as we have here, the defendant, who committed the murder for a pecuniary gain, committed it for remuneration. We also believe that the language was used because in most cases remuneration does involve pecuniary gain. When we examine both *Beets* and *Rice* in full, we believe that they provide that "remuneration" is the receipt of some benefit or compensation which is to be received because of the killing. *Beets,* 767 S.W.2d at 734; *Rice,* 805 S.W.2d at 434. In this case Burton was to receive the benefit of Underwood's services in killing an unknown person or persons, a benefit he was to receive because of the killing.

■ Underwood contends that the evidence is insufficient because the evidence shows that Underwood and Burton never reached an agreement that Burton would carry out the murder intended by Underwood. Underwood was prosecuted for solicitation to commit capital murder in accordance with the provisions of section 15.-03(a) of the Texas Penal Code. That section provides that one "commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct." TEX.PENAL CODE ANN. § 15.03(a) (Vernon 1974). By its very terms the statute demonstrates that an actual agreement between the two is not required. Underwood presents no cases indicating that such an agreement would be required. We overrule point of error number one.

In point of error number three, Underwood insists that the State failed to prove, in the murder case, that the grand jury exercised due diligence to ascertain the identity of the unknown deadly weapon. Count three of the indictment alleged that Underwood killed Mr. Curren by striking him with a deadly weapon, the description of which is unknown to the grand jury. Likewise, in the application paragraph of the charge in the murder case, the jury was instructed that it could convict Underwood of murder if it found beyond a reasonable doubt that Underwood had killed Mr. Curren by striking him with a deadly weapon, the description of which is unknown to the grand jury.

■ The Texas Court of Criminal Appeals has held that when an indictment alleges that the manner or means utilized to inflict an injury is unknown, and the evidence at trial does not show with certainty what type of instrument was used, the State has met its prima facie burden of showing that the instrument was unknown to the grand jury. *Matson v. State,* 819 S.W.2d 839, 847 (Tex.Crim.App.1991). Only where the evidence at trial shows what instrument was used to inflict the injury must the State prove that the grand jury did not know the manner or means of inflicting injury, and that it used due diligence in its attempts to ascertain that manner or means. *Id.* In this case there was no evidence at trial as to what instrument Underwood used to inflict injury. Consequently, the State met its prima facie burden and was not otherwise required to prove that the grand jury used due diligence in its attempts to ascertain the manner or means.

Underwood relies on the cases of *Heras v. State,* 786 S.W.2d 72, 73 (Tex.App.—El Paso 1990, no pet.); *Huffman v. State,* 775 S.W.2d 653, 661–62 (Tex.App.—El Paso 1989, pet. ref'd); and *Brown v. State,* 704 S.W.2d 506, 508 (Tex.App.—Dallas 1986, pet. ref'd). We have examined all three of these authorities and find none to be inconsistent with either our holding in this case

or the holding in *Matson* upon which we rely. We overrule point of error number three.

Underwood asserts in point of error number two that the trial court committed reversible error by omitting the essential element of remuneration from the first application paragraph in the solicitation to commit capital murder charge. The court gave alternative application paragraphs to the jury for the offense of criminal solicitation of capital murder. The element of remuneration was not included in the first alternative charge on the offense. Underwood objected to that charge due to the omission on the ground that there was a variance between the charge and the indictment, which alleged that Underwood sought to get Burton to kill Doris Hembree, a peace officer, for remuneration and the promise of remuneration.

We must first determine if there was error in the charge and then, if there was, whether the accused was harmed by the error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g).

The State responds to Underwood's argument by contending that the indictment merely alleges two different bases for solicitation of capital murder: one, that the proposed victim was a peace officer and two, that the solicitation was for remuneration. *See* TEX.PENAL CODE ANN. § 19.-03(a)(1), (3) (Vernon 1989).

The Texas Court of Criminal Appeals has held that unnecessary matter in an indictment, if it is descriptive of that which is legally essential to charge a crime, must be proved as alleged even though needlessly stated. *McWilliams v. State,* 782 S.W.2d 871, 873 (Tex.Crim.App.1990).

As the indictment is written, if it is read with the view that it is for the offense of soliciting the murder of a peace officer, the term "FOR REMUNERATION AND THE PROMISE OF REMUNERATION" is descriptive of "cause" in the phrase "CAUSE THE DEATH OF AN INDIVIDUAL," an essential element of the offense of soliciting the murder of a peace officer. Consequently, even though it is unnecessary to allege remuneration when charging the offense of solicitation of capital murder on the theory that the proposed victim is a peace officer, if it is alleged in such a way that remuneration is alleged as descriptive of one of the essential elements of that offense, it must be proven.

We therefore hold that the trial court erred by submitting the cause to the jury in such a way as to allow them to convict Underwood without finding that he solicited Burton to cause Doris Hembree's death for remuneration, as alleged in the indictment.

The State argues that the charge is not at variance with the indictment because the indictment alleges both theories of solicitation of capital murder and both theories were submitted in the charge to the jury. Had the indictment been written in such a way as to be clear that both theories were being charged, there would have been no error. However, with the allegation of remuneration being alleged as descriptive of causing the death of the proposed victim, an essential element of the offense that the State claims was being submitted to the jury by the offending paragraph, the State was required to prove it.

The State also argues that even if there were a variance it was not a fatal variance because Underwood was not prejudiced since the indictment supported both theories and the evidence supported both theories for conviction. Based upon the indictment and court rulings as to the requirement of proof with respect to those indictments, Underwood could have reasonably supposed that the State would be required to prove and the jury would be required to find beyond a reasonable doubt that he solicited Burton to cause the death of Doris Hembree, a peace officer, for remuneration or the promise of remuneration. Instead, the jury was permitted to convict him of the charge without having to make such a finding. Consequently, we hold that Underwood was harmed by the error in the charge. We sustain point of error number two.

The judgment in the murder case, cause number 0350810D in the court below and our cause number 2–91–448–CR, is affirmed. The judgment in the solicitation of capital murder case, cause number 0419080D in the court below and our cause number 2–91–447–CR, is reversed and that cause remanded for a new trial.