

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00138-CR
_____


DARIEL DESHAUN GREENWOOD, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 24F0622-005


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Appellant, Dariel Deshaun Greenwood, was convicted by a Bowie County jury of the offenses of capital murder for remuneration and engaging in organized criminal activity, and he was sentenced to life imprisonment without parole and life imprisonment, respectively. *See* TEX. PENAL CODE ANN. §§ 19.03(a)(3), 71.02(b) (Supp.).[1] Greenwood challenges the legal sufficiency of the evidence to support his convictions, arguing that (1) there was no evidence to prove the aggravating factor of remuneration and (2) the State presented no evidence that he intended to engage in a continuity of criminal activity. Because we find the evidence legally sufficient, we affirm the judgment of the trial court.

## I.      Standard of Review

"The standard for reviewing the sufficiency of the evidence to support the elements of the offense is whether, in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt." *Swenson v. State*, 707 S.W.3d 297, 301 (Tex. Crim. App. 2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ratliff v. State*, 663 S.W.3d 106, 112 (Tex. Crim. App. 2022)); *see Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous review focuses on the quality of the evidence presented." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 917–18 (Tex. Crim. App. 2010) (Cochran, J. concurring)). "We examine legal sufficiency under the direction of the

---

[1]In companion cause number 06-24-00139-CR, Greenwood appeals his convictions for burglary of a habitation and engaging in organized criminal activity. In companion cause number 06-24-00140-CR, Greenwood also appeals from his conviction for engaging in the organized criminal activity of aggravated robbery with a deadly weapon.

*Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"The jury acts as the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented." *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). We review all evidence, whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas*, 517 S.W.3d at 766.

### A.     There was Legally Sufficient Evidence to Support the Remuneration Factor

In his first point of error, Greenwood argues that the State did not provide legally sufficient evidence to support the element of remuneration for the capital murder charge. *See* TEX. PENAL CODE ANN. § 19.03(a)(3).

A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (Supp.). "A person commits [capital murder] if [he] commits murder as defined by Section 19.02(b)(1) and . . . commits the murder for remuneration or the promise of remuneration . . . ." TEX. PENAL CODE ANN. § 19.03(a)(3). On

appeal, Greenwood only challenges the remuneration element of his conviction for capital murder.

Courtney Williams, a co-conspirator, testified that he, Greenwood, and a few others discussed a plan to "burglarize a dope house and receive dope from there" and that they would "get eight to 10,000 in dope." Williams explained that they traveled from Memphis to Texarkana in Greenwood's mother's vehicle, which Greenwood was driving. Williams testified that while he believed the plan was to break into the dope house, he realized "there was more to it than that" and that they were "paid to shoot somebody or do more than" that. He explained that the day before the shooting and the burglaries, they drove around to look at the houses and the autobody shop where the crimes were to be committed.

On the morning of July 15, 2021, Williams, Greenwood and Cedric Alexander arrived at the house they intended to burglarize. Williams got out of the car with another male referred to as "Punch Out," while Greenwood and Alexander remained in the vehicle. After tying up the elderly man who lived in the home, they realized they had the wrong house and left, taking a backpack and "some shoes." Greenwood was the driver of their vehicle at the time.

Next, they went to the autobody shop. Upon arriving, Punch Out got out of the vehicle. Williams testified he heard "[t]wo gunshots." Punch Out then ran down the street to where Greenwood was parked and got into the car, then they drove off.

Williams stated that, after the shooting, he knew "they came out [t]here to be paid to kill somebody." He explained that after the shooting, they changed into different clothes and went to a gas station where they met up with a black truck. Greenwood exited their car, got into the

4

black truck, and then returned to their car. Williams believed they were returning to Memphis, but Greenwood drove them to another home that Williams and Punch Out broke into.

After being arrested for the incidents that occurred on July 15, 2021, Williams explained that he spoke with Greenwood who told him, "[M]ake sure you don't say nothing." Williams testified that Greenwood also explained that he had the money to bond Alexander out, but according to Williams, Greenwood did not have that much money on him before they came to Texarkana for the crimes they committed.

The evidence shows that Greenwood had $7,801.00 on his person when he was arrested. Sergeant Cody Harris, with the Texarkana, Texas, Police Department, testified that the results of the department's investigation "determined that these individuals were hired to come commit a burglary to obtain dope and commit a murder while they were in town hired by LCB."[2] Harris also stated that the information he obtained confirmed that after the shooting, Greenwood met with another person, and that is when police believe money was exchanged.

"[R]emuneration is given a broad definition which . . . includes the idea of a reward given or received because of some act." *Rice v. State*, 805 S.W.2d 432, 434 (Tex. Crim. App. 1991). While Greenwood challenges the sufficiency of the evidence to support the remuneration factor, the jury heard testimony from an accomplice and an independent police investigator that Greenwood, along with others, was promised something, whether it was money or "dope," to shoot the victim. "The accomplice witness testimony in a capital murder case does not require corroboration concerning the elements of the aggravating offense, i.e.[,] the elements which

---

[2]It was explained that "LCB" is a local gang known as Loyalty Cash Business.

5

distinguish murder from capital murder." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (citing *Gosch v. State*, 829 S.W.2d 775, 777 n.2 (Tex. Crim. App. 1991), *cert. denied*, 509 U.S. 922 (1993); *May v. State*, 738 S.W.2d 261, 266 (Tex. Crim. App. 1987), *cert. denied*, 484 U.S. 1079 (1988); *Anderson v. State*, 717 S.W.2d 622, 631 (Tex. Crim. App. 1986), *cert. dismissed*, 496 U.S. 944 (1990); *Romero v. State*, 716 S.W.2d 519, 520 (Tex. Crim. App. 1986), *cert. denied*, 479 U.S. 1070 (1987)). The jury was free to consider the testimony from Williams, and we defer to the jury's role to weigh the credibility of the witnesses and resolve conflicts in their testimony. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Thus, we find that the cumulative force of the incriminating evidence is sufficient to support a capital murder conviction and that a rational jury could find beyond a reasonable doubt that Greenwood committed murder for remuneration. *See Balderas*, 517 S.W.3d at 766. As a result, Greenwood's legal sufficiency challenge to the remuneration factor of his capital murder conviction is overruled.

### B. There was Legally Sufficient Evidence to Support Continuity of Criminal Activity

In his second point of error, Greenwood contends that the evidence is legally insufficient to establish that he intended to participate in a continuous course of criminal activity, which is a necessary element to sustain a conviction under the organized criminal activity statute.

A defendant commits the offense of engaging in organized criminal activity if, "with the intent to establish, maintain, or participate in a combination," he "commits or conspires to commit one or more of the" enumerated offenses, including capital murder. TEX. PENAL CODE ANN. § 71.02(a)(1) (Supp.). Section 71.01(a) defines a "[c]ombination" as "three or more

6

persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (Supp.). The Texas Court of Criminal Appeals has construed this language as requiring a "continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). It involves "more than the intent to [merely] commit the enumerated offense," a plan to commit a single act, or proof of working jointly to commit a crime—it requires proof of continuity. *Hart v. State*, 89 S.W.3d 61, 63, 64 (Tex. Crim. App. 2002); *see Nguyen*, 1 S.W.3d at 696–97. The activities do not have to individually be criminal offenses to satisfy the statutory requirement, and a single criminal offense can be sufficient. *Nguyen*, 1 S.W.3d at 697; *Dowdle v. State*, 11 S.W.3d 233, 236 (Tex. Crim. App. 2000) (continuous activities after a shooting included fleeing, re-grouping, discussing a plan of action, and traveling to another county with stolen goods). However, the statute requires proof of intended continuity, i.e., "that the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend[ed] to work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697.

Greenwood argues that the State's evidence did not show continuity of criminal activity, but rather that Greenwood, "as a party, intended to commit three separate offenses within the same criminal episode." The State's theory of the continuity factor, as explained in its closing, was that after the goal of shooting the victim was achieved, the four individuals, including Greenwood, "continued to work together" when they went and burglarized the second home.

The evidence shows that the group of four men traveled from Memphis to Texarkana with a plan to burglarize a home in search of "dope." Williams testified that he soon after

7

realized that there was more to the plan, including being paid to shoot someone. While in Texarkana, the group worked together to break into one man's home, while armed, tied the elderly occupant up on the floor, took items from his home, and fled. After burglarizing the first home, the group reconvened at a nearby house. They next went to an autobody shop, where one of the members of their group exited their vehicle, went and shot the victim, and fled back to their vehicle where Greenwood drove the group away. Following the shooting, they stopped to change clothing, and then Greenwood met with someone at a gas station. The group then proceeded to the home of the shooting victim's wife and broke into and burglarized her home before the police arrived. Greenwood was arrested in a vehicle with Alexander, driving away from the area of the second burglary.

Greenwood relies on *Lashley v. State* for his assertion that he was merely a party to three offenses within the same criminal episode. *Lashley v. State*, 401 S.W.3d 738, 744–45 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In *Lashley*, the appellant was part of a group that burglarized multiple structures in one unoccupied apartment complex. *Id.* at 744. The appellate court rejected the State's argument that each criminal violation established intent to engage in a continuous course of criminal activity and found that the criminal violations were all part of a single criminal episode to accomplish a single goal, stealing copper from the apartment complex. *Id.* at 744–45.

The facts before us, however, differ from those in *Lashley*. Here, Greenwood and his cohorts burglarized a home, fled from that home, regrouped, and went out to murder the victim. After shooting the victim, they fled that scene, regrouped, changed clothing, and decided to

8

continue their criminal activity by burglarizing the victim's wife's home. Williams testified that, prior to burglarizing the second home, he believed they had accomplished what they were there for, initially burglarizing a dope house, though they entered the wrong home, and shooting someone for payment. Williams claimed it was only after they changed their outfits and began driving to the second home that he realized they were continuing their criminal activities. The jury was free to determine from that evidence that those incidents did not further one criminal goal, as in *Lashley*, but rather, that they were part of a continuous criminal activity engaged in by Greenwood and his co-conspirators.

We find this case more analogous to *Dowdle*. *Jones v. State* presents a thorough summary of *Dowdle* as it relates to the continuity factor, explaining

> In *Dowdle*, for example, the defendant and two of his friends were convinced to participate in a burglary by Mills, a known thief, and the group carried out the burglary that same night. *See Dowdle v. State*, 11 S.W.3d 233, 234 (Tex. Crim. App. 2000). After the burglary, an off-duty officer happened to notice the group carrying the stolen items to their car on his way home from work. *See id.* When he approached the car, Mills shot him. On appeal from the defendant's conviction under the engaging statute, the court of criminal appeals concluded that the analysis of "continuing course of criminal activity" was not limited to the burglary and shooting:
>
> > The Court of Appeals' analysis does not take into account the co-conspirators' activities following the shooting. The "continuing course of criminal activities" engaged in by appellant and the co-conspirators did not end with the shooting. The co-conspirators fled the scene, re-grouped to discuss what their plan of action would be, combined the separate loads of stolen property and traveled to another county to secrete the stolen property and the officer's gun.
>
> *Id.* at 236. After summarizing the defendant's confession of these events, the Court concluded: "Clearly, appellant's participation in organized criminal activities was not over when the officer was shot." *Id.* at 237.

9

*Jones v. State*, No. 05-20-00304-CR, 2022 WL 4376713, at *8 (Tex. App.—Dallas Sept. 22, 2022, pet. ref'd) (mem. op., not designated for publication). Here, there is evidence of the continuity of the criminal activities as the group committed a burglary, reorganized themselves, shot the victim at a different location, regrouped, changed clothing, met with another individual, and then continued their course of criminal activity to burglarize the second home and flee from there.

We conclude that the evidence was legally sufficient for a rational jury to find beyond a reasonable doubt that Greenwood and the three men constituted a combination of "three or more persons who collaborate[d] in carrying on criminal activities." *See* Tex. Penal Code Ann. § 71.01(a).

## II. Conclusion

The judgment of the trial court is affirmed.

Scott E. Stevens
Chief Justice

Date Submitted:     May 13, 2025
Date Decided:      May 30, 2025

Do Not Publish